1 

2025 CO 63
 The People of the State of Colorado, Petitioner/Cross-Respondent: v. Kari Mobley Kennedy, Respondent/Cross-Petitioner: 
No. 23SC847
Supreme Court of Colorado, En Banc
December 15, 2025
 Certiorari to the Colorado Court of Appeals Court of Appeals Case No. 21CA1203 
 Judgment Affirmed 
 
2

 Attorneys for Petitioner/Cross-Respondent: Philip J. Weiser, Attorney General Melissa D. Allen, Senior Assistant Attorney General Denver, Colorado. 
 Attorneys for Respondent/Cross-Petitioner: Mulligan Breit, LLC Patrick J. Mulligan Denver, Colorado. 
 
3

 JUSTICE HOOD delivered the Opinion of the Court, in which JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined. 
 JUSTICE BOATRIGHT, joined by CHIEF JUSTICE MARQUEZ, concurred in part and concurred in the judgment. 
 JUSTICE SAMOUR, joined by JUSTICE GABRIEL, specially concurred. 
 JUSTICE HART did not participate. 
 
4

 OPINION 
 HOOD JUSTICE. 
 ¶1 In this criminal case, we address whether Kari Mobley Kennedy's sentence was so grossly disproportionate to the offense she committed that the sentence is unconstitutional. As presented to us, this question has two parts: one general (focusing on the law that governs when an offense is particularly grave), and the other specific (focusing on the facts of Kennedy's case and the severity of her sentence). 
 ¶2 We first address whether vehicular homicide under section 18-3-106(1) (b)(1), C.R.S. (2025) (causing the death of another while driving a motor vehicle under the influence) ("vehicular homicide-DUI"), is a "per se" grave or serious offense - meaning always grave or serious - under the proportionality principles we refined in Wells-Yates v. People, 2019 CO 90M, 454 P.3d 191. In keeping with those principles, we hold that vehicular homicide-DUI is not per se grave or serious because it does not require proof of mens rea (that is, criminal intent), a key gauge of culpability during sentencing. 
 ¶3 We next consider whether Kennedy's twenty-four-year sentence for vehicular homicide-DUI was grossly disproportionate under the facts of her case. We conclude that it was not. 
 
5

 I. Facts and Procedural History 
 ¶4 In 2018, a severely intoxicated Kennedy veered into oncoming traffic and crashed into another car, killing the other driver. Both passengers from the other car survived but were severely injured; one was partially paralyzed. 
 ¶5 Responding police officers arrested Kennedy and took her to the hospital. A blood test conducted at the hospital, hours after the crash, revealed that Kennedy's blood alcohol content ("BAC") was still 0.282g/100ml, more than three times the legal limit. 
 ¶6 The prosecution charged Kennedy with vehicular homicide, vehicular assault, driving under the influence ("DUI"), and careless driving. Because it was Kennedy's fourth drinking-and-driving offense, she was charged with felony DUI. § 42-4-1301(1)(a), C.R.S. (2025). 
 ¶7 Kennedy pleaded guilty to one count of vehicular homicide-DUI and one count of vehicular assault-DUI. As part of a plea bargain, she agreed to a sentencing range of eight to thirty-three years in prison, with the possibility of probation, and the prosecution agreed to drop the remaining charges against her. ¶8 The court sentenced Kennedy to consecutive prison terms of twenty-four years for vehicular homicide-DUI (the maximum in the aggravated range) and five years for vehicular assault-DUI. 
 
6

 ¶9 In 2021, Kennedy filed a post-conviction motion seeking a proportionality review of her sentence, which the court denied, finding that vehicular homicide-DUI is a per se grave or serious offense because it always results in the death of another. On appeal, a division of the court of appeals held that vehicular homicide-DUI is not a per se grave or serious offense but otherwise affirmed Kennedy's sentence. People v. Kennedy, 2023 COA 83M, ¶ 2, 541 P.3d 11, 13. Kennedy disagreed with People v. Strock, 252 P.3d 1148, 1158 (Colo.App. 2010), creating a split between published opinions of different divisions of the court of appeals. 
 ¶10 Both parties petitioned this court for certiorari review, and we granted both petitions.[1] 
 
7

 IL Analysis 
 A. Standard of Review 
 ¶11 Whether the court of appeals division correctly applied Wells-Yates's interpretation of the per se grave and serious designation to the vehicular homicide-DUI statute presents a question of law that we review de novo. See McDonald v. People, 2024 CO 75, ¶ 7, 560 P.3d 412, 417. We also review the proportionality of a criminal sentence de novo. Wells-Yates, ¶ 35, 454 P.3d at 204. 
 B. Proportionality Review 
 ¶12 The United States and Colorado Constitutions prohibit the government from imposing cruel and unusual punishments. U.S. Const, amend VIII; Colo Const, art II, § 20 A prison sentence is unconstitutionally cruel and unusual if it's "grossly disproportionate" to the crime committed Harmelin v Michigan, 501 U.S. 957,1001 (1991) (Kennedy, J, concurring in part and concurring in the judgment) (quoting Solem v. Helm, 463 U.S. 277, 288 (1983)); see also Close v. People, 48 P.3d 528, 532 (Colo. 2002), abrogated on other grounds by, Wells-Yates. 
 ¶13 Courts evaluate proportionality using a two-step framework. Solem, 463 U.S. at 290-91. First, the court compares the gravity or seriousness of the offense to the harshness of the penalty. Id. In Colorado, we call this "an abbreviated proportionality review." Close, 48 P.3d at 537. Determining the 
 
8

 gravity or seriousness of a defendant's conduct requires a case-by-case analysis of factors, including 
 

 (1) "the harm caused or threatened to the victim or
 society";
 

 

 (2) whether the offense involved violence or the threat of
 violence;
 

 

 (3) "[t]he absolute magnitude of the crime"; (4)
 whether the offense is the lesser included or greater
 offense; (5) whether the offense was an attempted or a
 completed crime; (6) whether the defendant was an accessory,
 complicitor, or principal; and (7) the defendant's
 culpability and motive.
 

 McDonald, ¶ 12, 560 P.3d at 418 (alteration in original) (quoting Solem, 463 U.S. at 292-93). 
 ¶14 That gravity finding is then compared to the harshness of the sentence. Sentencing regimes established by our General Assembly are presumed to be constitutional, People v. Gross, 830 P.2d 933, 937 (Colo. 1992), so a sentence in the statutorily authorized range likely won't raise an inference of gross disproportionality, Rutter v. People, 2015 CO 71, ¶ 19, 363 P.3d 183, 188. Parole eligibility also reduces the harshness of the penalty, making it less likely that such sentences will raise an inference of gross disproportionality. People v. Drake, 785 P.2d 1257,1275 (Colo. 1990), abrogated on other grounds as recognized by, People v. Chavez-Barragan, 2016 CO 66, ¶¶ 33-34, 379 P.3d 330,338. If the gravity-harshness comparison doesn't lead to an inference of gross disproportionality, the analysis ends. 
 
9

 ¶15 Second, if that comparison does give rise to an inference of gross disproportionality, the court conducts a comparative analysis between the defendant's sentence and sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. Solem, 463 U.S. at 290-91. We refer to this step as "an extended proportionality review." Close, 48 P.3d at 537. 
 C. The "Per Se" Shortcut 
 ¶16 When considering the gravity or seriousness of an offense, we have designated certain crimes "per se grave or serious" -a shortcut unique to Colorado law. Wells-Yates, ¶ 13 n.6, 454 P.3d at 198 n.6. If a crime, "based on [its] statutory elements, necessarily involve[s] grave or serious conduct" in all factual scenarios, it's designated as per se grave or serious, and the court begins its abbreviated proportionality review by evaluating the harshness of the penalty. Id. at ¶¶ 63, 65, 454 P.3d at 209. This designation not only saves time, but it allows courts to avoid the "somewhat imprecise" practice of a case-by-case analysis. Id. at ¶ 12, 454 P.3d at 198 (quoting People v. Gaskins, 825 P.2d 30, 36 (Colo. 1992)). 
 ¶17 Despite these benefits of efficiency and consistency, we have encouraged caution before labeling a crime as per se grave or serious. Wells-Yates, ¶¶ 61-62, 454 P.3d at 208. We have done so because the label eliminates a longstanding layer of due process for criminal defendants. Hence, we have observed that the per se designation should rarely be used. Id. at ¶ 63, 454 P.3d at 209. 
 
10

 ¶18 Analytically, evaluating whether a crime is per se grave or serious is like evaluating a facial constitutional challenge -it requires a court to ensure that, based on the elements of the offense, there's "no set of circumstances" where the conduct and culpability of a convicted individual aren't grave and serious. United States v. Salerno, 481 U.S. 739, 745 (1987). 
 ¶19 For example, robbery, "by its very nature, ... is per se grave or serious because it will always involve knowing conduct and grave harm (or the threat of grave harm) to the victim or society (or both)." Wells-Yates, ¶ 64, 454 P.3d at 209; see also McDonald, ¶ 13,560 P.3d at 419 (enumerating aggravated robbery, robbery, burglary, attempted burglary, conspiracy to commit burglary, felony menacing, accessory to first degree murder, and the sale or distribution of narcotics as crimes that remain per se grave or serious after Wells-Yates'). 
 D. Is Vehicular Homicide-DUI Per Se Grave or Serious? 
 ¶20 In assessing culpability, courts consider the mens rea of an offense. See Solem, 463 U.S. at 293. Here, there is none. A person commits vehicular homicide-DUI when she: (1) "operates or drives a motor vehicle" (actus reus), (2) "while under the influence of alcohol or one or more drugs" (actus reus), and (3) "such conduct is the proximate cause of the death of another" (causation). § 18-3-106(1)(b)(1). "This is a strict liability crime," id., which means it requires no mens rea, § 18-1-502, C.R.S. (2025). 
 
11

 ¶21 The parties disagree about how to assess the requisite culpable mental state for vehicular homicide-DUI when addressing proportionality. The prosecution argues that the General Assembly's choice to designate vehicular homicide-DUI as a strict-liability crime signals its intent to elevate the seriousness of the conduct. The prosecution infers that the legislature allowed a defendant's "voluntary conduct" to establish culpability for proportionality review. After all, to be guilty of this offense, a defendant must have made a voluntary decision to drink and drive. And sadly, drunk drivers kill far too many people year after year. See, e.g., Birchfield v. North Dakota, 579 U.S. 438,443 (2016) (recognizing that throughout the United States, drunk driving claims thousands of lives each year). While acknowledging the seriousness of vehicular homicide-DUI, Kennedy counters that a strict-liability offense provides no basis for uniformly discerning a defendant's state of mind. Wells-Yates, ¶ 12, 454 P.3d at 198. Thus, Kennedy argues that such offenses should never be treated as per se grave or serious. 
 ¶22 We agree with Kennedy. When a crime requires no proof of mens rea, it is impossible to evaluate the culpability of defendants convicted of the offense under every factual scenario. See id., ¶ 63, 454 P.3d at 209. Consequently, we have never 
 
12

 designated a strict-liability crime per se grave or serious for purposes of a proportionality review. We decline the prosecution's invitation to start now.[2] 
 ¶23 In reaching this conclusion, we don't mean to diminish the significance of vehicular homicide-DUI. To state the obvious, the harm is enormous because it necessarily involves death. But that harm alone -no matter how tragic -is insufficient to make the offense per se grave or serious. Other crimes, such as manslaughter, criminally negligent homicide, and careless driving resulting in death, also require evidence that the defendant caused a death, but they still have not been designated as per se grave or serious. 
 E. Is Kennedy Entitled to an Extended Proportionality Review? 
 ¶24 So, we shift to a completely ad hoc assessment of whether Kennedy's sentence was unconstitutionally disproportionate. The trial court sentenced Kennedy in the aggravated range based on "the accident, the history, the BAG, the prior convictions, the [failed] attempts for rehabilitation." And the division also concluded that her sentence doesn't raise an inference of gross disproportionality. Kennedy, ¶¶ 27-28, 541 P.3d at 16. 
 
13

 ¶25 We agree with the courts below. Kennedy's conduct resulted in death and disability. And this was not an isolated incident; it was Kennedy's fourth DUI. Even after being discharged on bond in this matter, Kennedy was unable to abstain from abusing medication and alcohol. Her conduct precludes an inference of gross disproportionality, regardless of the elements of the offense. 
 ¶26 In comparing the gravity of this conduct to the harshness of the penalty, we note that Kennedy agreed to a sentencing range that included the twenty-four-year sentence imposed. And that sentence was statutorily authorized. § 18-1.3-401(1)(a)(V)(A.l), (6), C.R.S. (2025). Moreover, her sentence includes the possibility of parole. All these variables weigh against a conclusion that the sentence is unconstitutional. 
 ¶27 A comparison of the gravity of Kennedy's offense to the harshness of her sentence doesn't raise an inference that her sentence is grossly disproportionate. We therefore conclude that Kennedy is not entitled to an extended proportionality review. 
 III. Conclusion 
 ¶28 We affirm the judgment of the court of appeals. 
 JUSTICE BOATRIGHT, joined by CHIEF JUSTICE MARQUEZ, concurred in part and concurred in the judgment. 
 JUSTICE SAMOUR, joined by JUSTICE GABRIEL, specially concurred. 
 
14

 JUSTICE BOATRIGHT, joined by CHIEF JUSTICE MARQUEZ, concurring in part and concurring in the judgment. 
 ¶29 The majority concludes that vehicular homicide - driving under the influence ("DUI") is not per se grave or serious because it does not require proof of mens rea. I see it completely the opposite: Vehicular homicide -DUI is per se grave or serious because it is so devastating, life-ending, and destructive that it does not need proof of mens rea. In other words, it does not matter what the defendant intended, thought, or knew. Someone died because the defendant made the voluntary decision to drink alcohol to excess and then drive a motor vehicle. 
 ¶30 The majority speculates about some type of benign vehicular homicide - DUI with a lesser mental state, reasoning that because the offense is strict liability, "it is impossible to evaluate the culpability of defendants convicted of the offense under every factual scenario." Maj. op. ¶ 22. But a vehicular homicide -DUI with lesser "culpability" is not legally possible. The legislature has determined that every vehicular homicide -DUI is culpable under strict liability. § 18-3-106(1)(b), C.R.S. (2025). Therefore, while the majority implies that not every vehicular homicide -DUI is grave or serious, Maj. op. ¶ 22, again, I see it the opposite: There is no scenario of vehicular homicide - DUI that is not grave or serious. 
 
15

 ¶31 In every instance of vehicular homicide - DUI, a person needlessly dies because the defendant made the voluntary choice to become intoxicated and then drive a motor vehicle. People v. Rostad, 669 P.2d 126,129 (Colo. 1983) (holding that the "minimal requirement for a 'strict liability' offense is proof that the proscribed conduct was performed voluntarily"). What is more grave or serious than a person needlessly dying due to the conduct of a drunk driver? In my view, our admonition in Wells-Yates v. People, 2019 CO 90M, ¶¶ 62-63, 454 P.3d 191, 208-09, that the per se grave or serious designation should be used "cautiously" and only for "rare" offenses which are "grave or serious in every potential factual scenario," in fact supports designating vehicular homicide - DUI as per se grave or serious. 
 ¶32 Hence, while I agree with the majority that the sentence here is not unconstitutionally disproportionate, I ultimately only concur in the judgment because I strongly disagree with the majority's conclusion that vehicular homicide -DUI is not per se grave or serious. 
 ¶33 Based on the most recent data by the National Highway Traffic Safety Administration ("NHTSA"), thirty-four people die every day in the United States because someone chose to drink and then get behind the wheel of a vehicle. That's one person killed every forty-two minutes as a result of drunk driving. U.S. Dep't of Transp., NHTSA, Traffic Safety Facts: 2023 Data, Alcohol-Impaired Driving 1-2 (May 2025), https://crashstats.nhtsa.dot.gov/ Api/Public/ViewPublication/813713 [https://perma.cc/AR4P-ZQGZ] ("Traffic Safety Facts: 2023 Data"'). 
 
16

 For years, the "'slaughter'" of irresponsible driving has rivaled the "ravages of war." Mitchell v. Wisconsin, 588 U.S. 840, 851 (2019) (quoting Breithaupt v. Abram, 352 U.S. 432, 439 (1957)). It is no surprise that the United States Supreme Court has repeatedly spoken of the "carnage" and "frightful carnage" of preventable deaths due to irresponsible driving. Mitchell, 588 U.S. at 851 (first quoting South Dakota v. Neville, 459 U.S. 553, 558 (1983); and then quoting Tate v. Short, 401 U.S. 395, 401 (1971) (Blackmun, J., concurring)). 
 ¶34 Importantly, the Supreme Court cited the effectiveness of state DUI laws in reducing alcohol-related fatalities, particularly laws which increased penalties for recidivist drunk drivers or drivers with higher blood alcohol content ("BAC") levels. Id. at 852 (noting that state DUI laws have contributed to a decrease in annual highway fatalities from 25,000 deaths in the mid-1970s to mid-1980s, to below 10,000 deaths in 2014 (relying on Birchfield v. North Dakota, 579 U.S. 438,448 (2016))[1] 
 
17

 ¶35 Time and again, we also have grappled with DUI-related offenses, emphasizing the need for legislative deference when it comes to the penalties for these offenses. Concerning the offense of reckless vehicular homicide under Colorado law, we spoke of the "state['s] . . . legitimate interest in discouraging a specific evil which it believes to be of greater societal consequence." People v. Hulse, 557 P.2d 1205,1207 (Colo. 1976) (emphases added). And so, in Hulse, we rejected an equal protection challenge to reckless vehicular homicide which punished the offense more severely than the similarly defined offense of criminally negligent homicide. Id. We reasoned that with reckless vehicular homicide, there is an "additional element of a death caused [t]hrough the use of a motor vehicle," which the legislature chose to punish more severely. Id. at 1206. 
 ¶36 Just as we deferred to the legislature's decision to more severely punish reckless vehicular homicide in Hulse, in Rostad, we gave similar deference to "legislative choice" in the context of strict liability vehicular homicide - DUI, which "established penal sanctions for conduct alone." Rostad, 669 P.2d at 129. We explained that "subject to constitutional limits, legislation may punish conduct alone." Id. at 128. We reasoned that it is "a rational choice among many public policy alternatives" for the General Assembly to require "proof of proximate cause in criminal proceedings relating to the operation of a motor vehicle" which does not require "a finding of some undefinable mental state of the actor." Id. 
 
18

 Regarding the defendant's mens rea, we held that "[although th[e] mental state of voluntariness is not defined as a 'culpable mental state' for [the] purpose of the criminal code, the General Assembly has in reality defined 'strict liability' offenses to require proof of some minimal amount of conscious mental activity by the accused." Id. at 129. 
 ¶37 Turning to the per se grave or serious designation, we append this label to offenses which we determine to be grave or serious in themselves, rendering the first part of an abbreviated proportionality review unnecessary in each individual case. McDonald v. People, 2024 CO 75, ¶ 13, 560 P.3d 412, 419. When an offense is per se grave or serious, Colorado courts move directly to assessing the second part, the "harshness of the penalty." Id. 
 ¶38 The majority rightly begins by laying out the seven factors in McDonald that we should consider when assessing the gravity or seriousness of an offense. Maj. op. ¶ 13. But it is important to note that these seven factors are largely extrapolated from the Supreme Court's guidance in Solem v. Helm, 463 U.S. 277, 292 (1983), for assessing the gravity or seriousness of an offense in each case. To judge the gravity or seriousness of an offense, Solem guides courts to consider two major factors: (1) the "culpability of the offender"; and (2) the "harm caused or threatened to the victim or society" (the first two of the seven McDonald factors). Id. at 292. In evaluating this second factor, "harm caused or threatened to the 
 
19

 victim or society/' Solem states that we may consider factors such as (3) "[t]he absolute magnitude of the crime," (4) whether it is a "lesser included offense," (5) whether it is an attempted or completed crime, and (6) whether the defendant was an accessory after the fact or the principal. Id. at 293. In McDonald, we adopted all six as factors for determining the gravity or seriousness of an offense, but consistent with our decision in Wells-Yates, we added one more - (7) "whether the offense involved violence or the threat of violence." McDonald, ¶ 12, 560 P.3d at 418. Because McDonald factors (3) through (6) are meant to specifically address Solem's second factor, "harm caused or threatened to the victim or society," I will address only culpability and harm, which embrace nearly all seven McDonald factors. 
 ¶39 Section 18-1-503(3), C.R.S. (2025), sets forth the hierarchy of culpable mental states under Colorado criminal law from most culpable to least culpable; namely, (1) with intent, (2) knowingly, (3) recklessly, and (4) with criminal negligence. People v. Rigsby, 2020 CO 74, ¶ 21, 471 P.3d 1068,1074. Strict liability falls outside this common range of culpability: It "does not require a culpable mental state on the part of the actor." § 18-1-502, C.R.S. (2025). But strict liability nonetheless entails the "minimum requirement for criminal liability," which involves "a voluntary act or the omission to perform an act." Id. (emphasis added). This minimum level of voluntary mental activity is all that is necessary to prove a 
 
20

 defendant's guilt. Rostad rejected the assumption that proving a strict liability offense under Colorado law is "characterized by the absence of any mental state." 669 P.2d at 129. On the contrary, what suffices is that the conduct is a "product of conscious mental activity involving effort or determination." Id. 
 ¶40 Vehicular homicide -DUI is a product of conscious mental activity. The defendant chooses to imbibe an intoxicant to excess and then get behind the wheel of a 3,000-pound vehicle. Even absent intent, the voluntariness and consciousness of the decision to drink and drive involves both effort and determination. Of course, a vehicular homicide - DUI defendant may not have intended to kill the victim in the moment when a crash occurs. But the defendant voluntarily chose to ingest an intoxicant and then drive a motor vehicle, knowing the intoxicant impairs both their judgment and reaction time. Therefore, I disagree with the majority's comparison of vehicular homicide -DUI to manslaughter, criminally negligent homicide, and careless driving resulting in death. Maj. op. ¶ 23. All of these other offenses referenced by the majority require lesser mental states than vehicular homicide - DUI. Without diminishing the societal impacts of these other offenses, I stress that the scourge of motor vehicle deaths is a "specific evil" of "greater societal consequence" that our legislature has chosen to tackle here by means of strict liability. See Hulse, 557 P.2d at 1207. Defining the mental state that is required for an offense is the responsibility of the legislature, not this court. See Randolph v. People, 
 
21

 2025 CO 44, ¶ 12, 570 P.3d 1022,1026. And the legislature has decided that the defendant is culpable because they voluntarily chose to drink to excess and then drive, and this choice ultimately caused someone's death. Thus, the defendant's voluntary actions create culpability. 
 ¶41 In addition to culpability, a court must consider the "harm caused or threatened to the victim or society" in order to deem an offense as grave or serious. Salem, 463 U.S. at 292. Relevant factors include whether it is a "lesser included or greater offense," whether it is a complete or inchoate offense, and the "'absolute magnitude of the crime.'" McDonald, ¶ 12, 560 P.3d at 418 (quoting Solem, 463 U.S. at 293). Vehicular homicide - DUI is not a lesser offense of any crime, and it is the completed form of the offense. § 18-3-106(1)(b). As to the absolute magnitude of the crime, there is no doubt that the deceased victim, their family, and society suffer irreparable harm from the consequences of vehicular homicide - DUI. What harm is of greater magnitude than the loss of human life, especially when it is completely senseless? In this case, a twenty-two-year-old was killed, and his mother was left paralyzed. The outcome of this crime leaves an innocent family with a loss that will reverberate for at least a lifetime. I therefore believe that this offense, having such palpable harm in all cases, is grave or serious. 
 ¶42 While applying the Solem and McDonald factors to vehicular homicide - DUI leads to a conclusion that the offense is grave or serious in each case, the inquiry 
 
22

 does not end there. We must also consider whether vehicular homicide -DUI is per se grave or serious. Wells-Yates controls this question. McDonald, ¶¶ 23-26, 560 P.3d at 420-21 (holding that Wells-Yates announced new and extant rules in its holdings that subsequent legislative amendments should be considered; that not all narcotic offenses are per se grave or serious; and that the designation "must be reserved for those rare crimes" that are "grave or serious in every potential factual scenario" (quoting Wells-Yates, ¶ 63, 454 P.3d at 209)). 
 ¶43 In Wells-Yates, we addressed whether narcotic-related offenses generally, and possession and possession with intent to distribute specifically, should be deemed per se grave or serious. ¶ ¶ 54, 68, 454 P.3d at 207, 209. We answered no for five reasons, only two of which are of import here following McDonald. Wells-Yates, ¶¶ 54-75, 454 P.3d at 207-11. First, we observed that "recent legislative amendments" and the fact that "the legislature does not treat [i.e., punish] all drug felonies equally" disfavored designating all drug offenses as per se grave or serious. Id. at ¶¶ 58-59,454 P.3d at 208. Second, we admonished courts to use the label "cautiously" and to reserve it for "rare crimes" that are "grave or serious in every potential factual scenario." Id. at ¶¶ 62-63, 454 P.3d at 208-09. Under this framework, vehicular homicide -DUI is per se grave or serious. 
 ¶44 When it comes to DUI offenses, legislative amendments across the nation over the past three decades have increased penalties and lowered BAG thresholds. 
 
23

 Mitchell, 588 U.S. at 852 (noting that every state, including Colorado, adopted a BAC limit of 0.08% for DUI offenses after Congress made this a requirement for receiving federal highway funds (citing 23 U.S.C. § 163(a))); Ch. 236, sec. 3, § 18-3-106(2)(b), (c), 2004 Colo. Sess. Laws 780, 781. All this time, Colorado has not reduced the penalty for DUI-related offenses including vehicular homicide. See § 18-3-106(1)(c), C.R.S. (1993) (making vehicular homicide -DUI a class 3 felony). Once again, it is just the opposite: Colorado has in fact increased the penalties for repeat DUI offenders. See Ch. 262, sec. 1, § 42-4-1301(1)(a), 2015 Colo. Sess. Laws 990, 990 (making a fourth DUI misdemeanor conviction a class 4 felony). Long before Wells-Yates and after it was decided, there has been no legislative change evincing a softening of the General Assembly's tough stance on DUI offenses. Unlike with drug offenders in Wells-Yates, our society has not found benefits to lessening the penalties for drunk-drivers who cause a person's death. I therefore cannot see any trend of law or policy that would warrant a lessening of the gravity or seriousness of this offense. 
 ¶45 Second, Wells-Yates urged judicious use of the grave or serious label for "rare" offenses which are "grave or serious in every potential factual scenario." ¶ ¶ 62-63, 454 P.3d at 208-09. Crimes like robbery, burglary, or accessory to first degree murder, which we have designated as grave or serious, are not rarer than vehicular homicide - DUI. See McDonald, ¶ 13, 560 P.3d at 419; People v. Deroulet, 
 
24

 48 P.3d 520, 524 (Colo. 2002), abrogated on other grounds by, Wells-Yates, ¶¶ 16-17, 454 P.3d at 199. That said, only a few of these crimes result in death in every potential factual scenario. While a very serious crime like robbery only sometimes results in bodily injury, vehicular homicide - DUI always results in death, making it arguably even more grave or serious in every factual scenario. 
 ¶46 The majority acknowledges that the harm of death is "enormous," but stops short of affirming the gravity or seriousness of the offense that occasions it, asserting that harm alone is insufficient. Maj. op. ¶ 23. In my view, the majority's analysis ignores the voluntary acts of the defendant. As I have explained, in addition to the harm caused to the victim, their family, and society, the defendant is also culpable in every potential factual scenario by virtue of their voluntary decision to drink to excess and then drive. 
 ¶47 In any event, assuming that there is a vehicular homicide that has extraordinarily mitigating circumstances, the defendant is still eligible for probation, even with the offense being designated per se grave or serious. 
 ¶48 In sum, vehicular homicide - DUI should be deemed per se grave or serious after carefully applying our own precedent and that of the Supreme Court to the elements of the offense. Specifically, the crux of the majority's reasoning that there is no consideration of a defendant's culpability is inaccurate because vehicular homicide - DUI involves the voluntary choice to drink to excess and drive which 
 
25

 results in enormous harm in every instance. Accordingly, I respectfully concur in the judgment only. 
 
26

 JUSTICE SAMOUR, joined by JUSTICE GABRIEL, specially concurring. 
 ¶49 I fully concur in the majority opinion. I write separately, however, because I believe that there are compelling reasons for our court to rid our jurisprudence of the "per se grave or serious" designation in proportionality reviews of sentences. Although Kari Mobley Kennedy's counsel asked during oral arguments that we do just that, the question is not before us and has not been fully briefed. Therefore, for the same reason we couldn't address the issue in Wells-Yates v. People, 2019 CO 90M, ¶ 54, 454 P.3d 191, 207, we decline to tackle it here. Still, this is a matter that deserves our attention.[1] 
 ¶50 The determination of whether a crime is grave or serious is challenging because it is "somewhat imprecise." Id. at ¶ 12, 454 P.3d at 198 (quoting People v. Gaskins, 825 P.2d 30, 36 (Colo. 1992)). While we now have "generally accepted criteria for comparing the severity of different crimes on a broad scale," assessing whether a crime is grave or serious remains more of an art than a science. Id. (quoting Solem v. Helm, 463 U.S. 277, 294 (1983)). 
 
27

 ¶51 It was in Solem, some forty-two years ago, that the Supreme Court shed some light on appraising the gravity or seriousness of a crime for Eighth Amendment purposes. 463 U.S. at 294. It explained that to ascertain whether a crime is grave or serious, trial courts should consider "the harm caused or threatened to the victim or society" and "the culpability of the offender." Id. at 292. The Court then identified a non-exhaustive list of factors with respect to each part of this inquiry. Id. at 293-94. As it relates to the harm to the victim or society, trial courts should examine: the magnitude of the crime; whether the crime is a lesser-included offense or the greater-inclusive offense; whether the crime involves a completed act or an attempt to commit an act; and whether the defendant's role in the crime was that of a principal, complicitor, or accessory after the fact. Id. at 293. And, as it relates to culpability, trial courts should consider the defendant's motive, as well as whether the defendant's act was negligent, reckless, knowing, intentional, or malicious. Id. at 293-94. 
 ¶52 To be sure, the "per se" designation allows courts to sidestep this analysis, thereby eliminating any concerns related to the difficult practice of making the requisite determination and rendering any abbreviated proportionality review more efficient. But easier and faster isn't always better. 
 ¶53 In declining to consider all narcotics-related offenses per se grave or serious in Wells-Yates, we highlighted some shortcomings accompanying the per se 
 
28

 designation. For example, we mentioned that drug offenses sweep in "a wide spectrum of conduct," so it would be imprudent to paint them all with the same broad brush. Wells-Yates, ¶ 60, 454 P.3d at 208. We reasoned that it made "little sense to automatically treat the sale of a large quantity of cocaine by the leader of a drug cartel as equally grave or serious as the mere possession of a very small quantity of cocaine by a drug addict who is not involved in sale or distribution." Id. Indeed, we continued, the legislature itself doesn't afford all drug offenses the same treatment. Id. at ¶ 59, 454 P.3d at 208. And even when we're dealing with comparisons of the same offense - say, burglary in the second degree - in different cases, the facts and circumstances can affect a determination of gravity or seriousness; after all, not all burglaries in the second degree are created equally. 
 ¶54 Along the same lines, Wells-Yates implicitly recognized that the designation of a crime as per se grave or serious lacked a safety valve to reflect future legislative adjustments lessening the punishment for that crime, which we have characterized as "the best evidence of the views held by our maturing society, as expressed through its representatives in the legislature." Id. at ¶ 58, 454 P.3d at 208. For the first time, we held that recent legislative amendments making the punishment of drug offenses less severe "militate[d] against preserving a blanket rule rendering all such offenses inherently grave or serious." Id. Of course, short 
 
29

 of litigation, a per se grave or serious crime will retain that status even after relevant legislative adjustments. 
 ¶55 These and other limitations are particularly troubling for at least two reasons. First, the per se designation finds no support in Supreme Court jurisprudence; it is unique to Colorado law. Id. at ¶ 61, 454 P.3d at 208; see also Gaskins, 825 P.2d at 37 (following in the footsteps of three previous cases that had concluded with no detailed analysis that the crimes in question were grave or serious because those crimes involved either "violence or potential for violence by their very nature" or the "sale of illegal drugs"). Yet, article II, section 20 of the Colorado Constitution is identical to the Eighth Amendment, and we have historically embraced the Supreme Court's analytical approach to proportionality challenges. Wells-Yates, ¶ 10, 454 P.3d at 197. 
 ¶56 Second, and most importantly, as we cautioned in Wells-Yates, "designating a crime per se grave or serious has significant consequences" because it allows a court conducting an abbreviated proportionality review to bypass the first step of the analysis (whether the crime is grave or serious) and simply consider the harshness of the penalty. Id. at ¶ 62,454 P.3d at 208-09. The concern for unfairness is exacerbated by the fact that the legislature's establishment of the harshness of the penalty is entitled to great deference. Id., 454 P.3d at 209. Hence, designating a crime per se grave or serious renders a sentence all but "impervious to attack on 
 
30

 proportionality grounds." Id. (quoting Close v. People, 48 P.3d 528,538 (Colo. 2002), abrogated on other grounds by, Wells-Yates, ¶ 16, 454 P.3d at 199). Of course, any uneasiness about a per se designation is more pronounced in habitual criminal sentences, which are imposed without the trial court's exercise of discretion. Id. 
 ¶57 Given these concerns, the drawbacks of per se designations far outweigh any purported benefits. This is especially true when, as here, we haven't yet decided whether to tag a particular crime as per se grave or serious. Notwithstanding the test we formulated in Wells-Yates to determine per se status, id. at ¶ 63, 454 P.3d at 209 (reserving the per se label for rare crimes which, based on their statutory elements, inevitably involve grave or serious conduct), the members of this court cannot agree on whether vehicular homicide should be designated as per se grave or serious. Nor can my colleagues on the court of appeals. 
 ¶58 This is not surprising: There are reasonable arguments on both sides of the coin. Absent per se designations, we'd be focused solely on the gravity or seriousness of the vehicular homicide committed by Kennedy in this specific case and on the harshness of her sentence. Those are less challenging considerations that are hardly time-consuming. But don't take my word for it; the proof of the pudding is in the eating: The majority appropriately devotes a mere four short paragraphs to this part of the analysis. Maj. op. ¶¶ 24-27; see also Gaskins, 825 P.2d at 36 
 
31

 (indicating that "the initial scrutiny" of the gravity or seriousness of an offense and the harshness of the penalty to determine whether more than an abbreviated proportionality review is necessary "is not a demanding one"). The point is that the justification for per se designations only goes so far. 
 ¶59 In short, for more than three decades, Colorado has adhered to the idea that defendants who stand convicted of crimes that our appellate courts have deemed per se grave or serious are only entitled to a superficial proportionality review of their sentences. There are strong reasons to believe it is time to deep-six this concept. 
 --------- 
 Notes: 
 [1] We granted certiorari to review the following issues: 
 

 1. Whether vehicular homicide-DUI, §
 18-3-106(1)(b)(1), C.R.S. (2023), is a per se grave or
 serious offense for purposes of proportionality
 review.
 

 
 2. Whether the court of appeals erroneously ruled that
 the maximum sentence in the aggravated range, for a defendant
 with no prior felony convictions, did not give rise to an
 inference of gross disproportionality.
 
 [2] To the extent our holding conflicts with prior decisions of the court of appeals, those opinions are overruled. See, e.g., Strock, 252 P.3d at 1158. 
 [1] It is notable that annual alcohol-related highway fatalities have since increased. Compare 9,417 deaths in 2014 to 12,429 deaths in 2023. U.S. Dep't of Transp., NHTSA, Traffic Safety Facts: 2014 Data, State Alcohol-Impaired-Driving Estimates 2 (June 2016), https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/ 812264 [https://perma.cc/D2YJ-YAQ9]; Traffic Safety Facts: 2023 Data, supra ¶ 13, at 2. 
 [1] Were we to jettison the per se grave or serious designation in the future, it would not affect convictions that are already final. See McDonald v. People, 2024 CO 75, ¶ 32, 560 P.3d 412, 422 (stating that Wells-Yates's holding "removing narcotics-related offenses from the per se grave or serious list . . . merely regulated how habitual criminal sentences are to be evaluated during an abbreviated proportionality review" and is thus a "'prototypical procedural rule[],'" not a substantive rule that must be applied retroactively (quoting People v. Johnson, 142 P.3d 722, 725 (Colo. 2006))). 
 ---------