24CA1181 Peo v Kover 02-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1181
El Paso County District Court No. 17CR2444
Honorable Jill M. Brady, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jason Matthew Kover,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Moultrie and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Mark G. Walta, Alternate Defense Counsel, Littleton, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Jason Matthew Kover appeals the district court's order denying his postconviction claim that his twelve-year habitual criminal sentence is grossly disproportionate. We affirm.

## I.     Background

¶ 2     The prosecution charged Kover with, among other things, first degree felony murder and second degree murder stemming from evidence that he repeatedly stabbed a victim during an altercation. A jury acquitted Kover of the charged offenses but convicted him of the lesser included offense of criminally negligent homicide (the triggering offense). *People v. Kover*, slip op. at ¶ 7 (Colo. App. No. 18CA2271, Nov. 4, 2021) (not published pursuant to C.A.R. 35(e)) (*Kover I*).

¶ 3     The prosecution also charged Kover as a habitual criminal based on four prior El Paso County felony convictions (the predicate offenses):

- a 2000 conviction for false information to a pawn broker;

- 2001 and 2003 convictions for aggravated motor vehicle theft; and

- a 2006 conviction for conspiracy to commit robbery on an at-risk person.

¶ 4    After a bench trial, the court concluded that the prosecution proved the four predicate offenses beyond a reasonable doubt and adjudicated Kover a habitual criminal. *Id.* at ¶ 8. The court then sentenced Kover to twelve years in prison. *Id.* Kover directly appealed his conviction and habitual criminal adjudication, and a division of this court affirmed. *See generally id.*

¶ 5    Kover timely filed a pro se Crim. P. 35(c) motion. He asserted that his trial counsel provided ineffective assistance by failing to request a proportionality review of his habitual criminal sentence. Kover also cursorily identified claims of "jury instruction self defense" and "prosecutorial misconduct."

¶ 6    The district court granted Kover's request for postconviction counsel. Appointed counsel filed a supplemental motion asserting that both trial counsel and direct appeal counsel provided ineffective assistance by failing to challenge the proportionality of Kover's sentence. The supplement did not reassert or develop the remaining two issues asserted in Kover's pro se motion.[1] After the

---

[1] Nor does Kover raise them on appeal. Thus, we deem them abandoned. *See People v. Smith*, 2024 CO 3, ¶ 18 (noting that abandonment "typically arises from a party's decision not to pursue or reassert a claim that the party had raised previously").

2

prosecution conceded that Kover was entitled to an abbreviated proportionality review, the district court elected to conduct such a review without deciding whether trial or direct appeal counsel were ineffective.

¶ 7    The court ordered further briefing on the facts and circumstances underlying Kover's triggering and predicate offenses.

¶ 8    The prosecution submitted the arrest warrant affidavits underlying Kover's predicate offenses.  Kover replied and, with the exception of the false information to a pawnbroker conviction, did not dispute the facts set forth by the prosecution.

¶ 9    In a detailed written order the district court found that, considered together, Kover's triggering and predicate offenses were not so lacking in gravity or seriousness as to give rise to an inference that his twelve-year sentence was grossly disproportionate; nor was the sentence unduly harsh, particularly considering Kover's parole eligibility.  The court thus concluded that an extended proportionality review was not warranted and didn't grant a hearing.

## II.    Proportionality

¶ 10    Kover contends that the district court erred by ruling that his twelve-year sentence does not give rise to an inference of gross disproportionality and thus also erred by declining to conduct an extended proportionality review.  We disagree.

### A.    Legal Principles and Standard of Review

¶ 11    The United States and Colorado Constitutions prohibit "extreme sentences that are 'grossly disproportionate' to the crime." *Wells-Yates v. People*, 2019 CO 90M, ¶ 5 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

¶ 12    When, as here, a defendant challenges the proportionality of a habitual criminal sentence, the district court must first conduct an abbreviated proportionality review assessing (1) the gravity and seriousness of both the triggering and predicate offenses and (2) the harshness of the penalty imposed for the triggering offense.  *Id.* at ¶ 23.

¶ 13    Although some crimes are per se grave and serious, the gravity or seriousness of an offense typically requires a fact-based inquiry into several factors, including the harm caused or threatened to the victim or society; whether the offense involved violence or the threat

of violence; whether the offense was an attempted or a completed crime; whether the defendant was an accessory, complicitor, or principal; and the defendant's culpability and motive. *McDonald v. People*, 2024 CO 75, ¶ 12. In analyzing the gravity or seriousness of the triggering and predicate offenses, a court need not classify each crime as grave and serious. *People v. Terry*, 2019 COA 9, ¶ 41, *overruled on other grounds by People v. Segura*, 2024 CO 70. Instead, it determines whether, *in combination*, those offenses "are so lacking in gravity or seriousness so as to suggest that the sentence is unconstitutionally disproportionate to the crime." *Wells-Yates*, ¶ 23.

¶ 14 In assessing the harshness of the penalty, the court should consider both the length of the sentence and the defendant's parole eligibility, affording "great deference" to the legislature's determination. *Id.* at ¶ 62. Given the "primacy of the General Assembly in crafting sentencing schemes," an abbreviated proportionality review will almost always result in a conclusion that the sentence is constitutional. *Id.* at ¶ 21 (citation omitted).

¶ 15 We review de novo whether a sentence raises an inference of gross disproportionality. *See id.* at ¶ 35. We likewise review de

5

novo the denial of a Crim. P. 35(c) motion without a hearing. *People v. Cali*, 2020 CO 20, ¶ 14.

### B. The Gravity and Seriousness of the Triggering and Predicate Offenses and the Harshness of the Penalty

¶ 16    Although the People ask us to determine that criminally negligent homicide is per se grave and serious, we need not reach that issue. *See People v. Kennedy*, 2025 CO 63, ¶ 23 (noting that, notwithstanding the "enormous" harm that crimes involving death necessarily involve, criminally negligent homicide "still [has] not been designated as per se grave or serious"). Instead, we conclude that Kover's triggering offense was grave and serious under the facts and circumstances adduced at trial:

- After being asked to leave the victim's home, Kover and a companion returned uninvited to the home.

- Kover knocked on a bedroom window, which, because it was not adequately secured, fell into the house.

- One eyewitness testified that Kover attempted to enter the house through the window.

- The victim pushed Kover back out and either climbed or fell out after him.

- The victim's girlfriend handed the victim a metal tool resembling a prybar.

- During an ensuing fight between Kover and the victim, Kover pulled out a knife and stabbed the victim multiple times, inflicting ten penetrating stab wounds to the neck, torso, and thigh.

- An eyewitness said that Kover stabbed the victim after the victim was disarmed and while he was either held or overtaken by Kover's companion.

- The victim died from "massive bleeding" before emergency medical personnel arrived.

- Kover and his companion fled the scene.

¶ 17    We conclude that these undisputed facts and circumstances demonstrate a significant harm to the victim and society, despite the fact that the jury found Kover guilty of a lesser included offense with a correspondingly lesser mental state. Indeed, acting as the principal, Kover completed a violent act which resulted in the victim's death. Kover then fled the scene. The act, which involved multiple stabbings, demonstrated a magnitude of violence that posed significant harm not only to the victim but to society. We

therefore agree with the district court that under the circumstances presented, the triggering offense is grave or serious.

¶ 18    We also agree with the district court's assessment of the predicate offenses. Though three of the four predicate offenses were not, on their own, grave and serious, the facts underlying Kover's 2006 conviction for conspiracy to commit robbery on an at-risk person indicate a threat of grave harm to the victim and society. And, notwithstanding the fact that Kover did not act as the principal, the facts and circumstances underlying this conviction reflect:

- After injecting methamphetamine, Kover drove a companion around a mall looking for victims in order to steal their purses.

- The companion told Kover to stop the vehicle, exited, and approached an "old lady."

- The companion "snatched" the old lady's purse and slammed her into the side of the vehicle.

- Kover "knew" his companion was going to steal the purse because they had discussed it.

- Once Kover realized that police were in pursuit, he made the decision to try and outrun the police, driving at speeds double the posted limit, failing to observe traffic signals, and ignoring numerous verbal commands to stop once he exited the vehicle and began running.

¶ 19 We are not persuaded otherwise by Kover's assertions that this crime was not grave and serious because he did not "actually" rob the victim and played only a "tangential role in this incident." The evidence shows that Kover's role was integral rather than merely tangential: he knew what the plan was, he assisted in its execution, and he did nothing to prevent the robbery or assist the elderly victim, instead fleeing and placing others at risk. And the knowing targeting of an at-risk victim elevates the gravity and seriousness of the offense.

¶ 20 Turning to the harshness of Kover's sentence for the triggering offense, we also agree with the district court that Kover's twelve-year sentence is not unduly harsh. The presumptive range for Kover's class 5 felony was one to three years imprisonment. § 18-1.3-401(1)(a)(V)(A), C.R.S. 2025. But when, as here, a defendant is on parole at the time of the offense, the sentencing range is

increased to two to six years. § 18-1.3-401(8)(a)(II). The habitual criminal statute required a sentence of four times the maximum in the presumptive range. *See* § 18-1.3-801(2)(a)(I)(A), C.R.S. 2025. Thus, twelve years represents *only twice* the maximum sentence Kover could have received even without his habitual criminal adjudication. In addition, the district court appropriately noted Kover's history of felony recidivism as a legitimate consideration in determining whether his sentence raised an inference of gross disproportionality. *See Wells-Yates*, ¶ 23; *see also People v. Loris*, 2018 COA 101, ¶ 30 (considering a defendant's "persistent disrespect and disregard for the rule of law" in making a proportionality determination (citation omitted)). Indeed, Colorado has approved punishing more harshly those who commit repeated criminal acts as a "legitimate penological goal." *Wells-Yates*, ¶ 22. Further, the record reflects that Kover is parole eligible, which may very well reduce his actual period of confinement. *Id.* at ¶ 14.

¶ 21    Under these circumstances, we cannot conclude that Kover's sentence raises an inference of gross disproportionality. Accordingly, we perceive no error in the district court's

determination that he is not entitled to an extended proportionality review.

### III. Kover Was Not Entitled to a Hearing

¶ 22 Kover also contends that the district court erred by failing to hold a hearing on his proportionality claim to give him the opportunity to "develop and elucidate" additional facts underlying his triggering and predicate offenses.[2]

¶ 23 Kover now argues that, at a hearing, he would have been able to introduce evidence that his triggering offense "was a setup orchestrated . . . in a cynical effort to bait him into a violent confrontation," and that he was "also something of a victim" because his ex-girlfriend "set in motion the events that led to this tragedy." But he did not make these allegations in any of his postconviction filings. And in direct response to the prosecution's proportionality arguments, Kover didn't dispute any of the facts

---

[2] Kover requested a hearing on his ineffective assistance of counsel claims. But when the court agreed to conduct a proportionality review and allowed the parties to brief proportionality, Kover did not request a hearing; rather, he responded to the prosecution's proportionality arguments.

that the prosecution set forth regarding the triggering offense or the predicate offense that the district court deemed grave and serious.

¶ 24    For these reasons, we cannot conclude that the district court erred by declining to grant a hearing. *See* Crim. P. 35(c)(3)(IV); *see also White v. Denv. Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988) (to warrant a hearing on a Crim. P. 35(c) claim, a defendant must allege facts which, if true, would entitle him to the requested relief).

## IV.    The Reply Brief

¶ 25    For the first time in his reply brief, Kover asserts that his habitual criminal sentence is constitutionally infirm because, in the adjudication phase, his habitual criminal counts were not submitted to a jury for a determination that the predicate offenses involved charges arising out of separate and distinct criminal episodes. He relies on *People v. Gregg*, 2025 CO 57, which recently held, among other things, that the question of whether prior convictions arose from separate and distinct criminal episodes requires a jury finding. *Id.* at ¶ 24.

¶ 26    Kover acknowledges that this court does not address issues raised "for the first time in a reply brief." *People v. Owens*, 2024 CO 10, ¶ 90. But he asserts that we should do so here because

12

(1) *Gregg* was not announced until after he filed his opening brief; (2) there is a strong likelihood that *Gregg* will not be applied retroactively to cases on collateral review; and (3) any effort to file a new postconviction motion challenging his habitual criminal sentence in light of *Gregg* will "almost certainly run up against" the procedural bars governing postconviction motions.

¶ 27 As we understand it, Kover cites to *Griffith v. Kentucky*, 479 U.S. 314 (1987), for the proposition that we should address his new constitutional claim now because new rules of criminal law apply to "all cases . . . pending on direct review or not yet final." *Id.* at 328. But this appeal is not before us on direct review. Rather, Kover's direct review concluded and his conviction became final when the mandate issued in *Kover I*. This appeal is a collateral review, the very type of proceeding to which Kover concedes "a strong likelihood" exists "that *Gregg* will not be applied." Further, *Gregg* applies *Erlinger v. United States*, 602 U.S. 821 (2024), which was announced nearly a year before Kover filed his opening brief in this appeal. He offers no reason why he couldn't rely on *Erlinger* to advance the constitutional argument he asserts for the first time in reply.

¶ 28    Given this posture, we decline to address the issue he raises for the first time in his reply.

## V.    Disposition

¶ 29    We affirm the order.

JUDGE MOULTRIE and JUDGE BERNARD concur.