25CA0753 Peo v Williams 03-05-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0753
Montezuma County District Court No. 23CR223
Honorable Todd Jay Plewe, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert Shane Williams,

Defendant-Appellant.

SENTENCE AFFIRMED

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Janet Kinniry, Gardner, Colorado, for Defendant-Appellant

¶ 1      Defendant, Robert Shane Williams, appeals his twelve-year prison sentence for second degree burglary (theft of a firearm), arguing that the sentence is grossly disproportionate.  We affirm.

I.      Background

¶ 2      Williams was charged with several crimes arising from allegations that, while on probation, he broke into three cabins, stole three firearms, ammunition, knives, and other items, and caused damage to the cabins.  The charges included three counts of second degree burglary, three counts of theft, two counts of criminal mischief, and three habitual criminal sentence enhancers.

¶ 3      Williams pleaded guilty to one count of second degree burglary (theft of a firearm), a class 3 felony, in exchange for dismissal of the remaining charges.  The plea agreement left sentencing open to the court but specified that the presumptive range of imprisonment was four to twelve years.  Williams stipulated to a factual basis that he had broken into three cabins and stolen firearms and other items.

¶ 4      The presentence investigation report indicated that Williams had nine prior felonies: first degree criminal trespass (twice), giving false information to a pawnbroker, motor vehicle theft, vehicular eluding, contributing to the delinquency of a minor, possession of a

1

controlled substance with intent to distribute, possession of a controlled substance, and possession of a weapon by a previous offender. Williams also had several misdemeanor convictions, including nonconsensual sexual contact and seven thefts.

¶ 5 The district court sentenced Williams to twelve years in prison — the top of the presumptive range — with a three-year period of mandatory parole. The court noted his nine prior felony convictions and his commission of the instant offense while he was on probation. Based on that criminal history, the court concluded that Williams was "a danger to [the] community" and would likely "continue to commit crimes" if he were not incarcerated.

¶ 6 A few weeks later, Williams filed a motion for reconsideration of his sentence and a request for a proportionality review. He argued, among other things, that his sentence was grossly disproportionate to his crime. But before the district court ruled on his motion, Williams directly appealed, raising the same argument.

## II. Analysis

¶ 7 We conclude that Williams's twelve-year sentence for second degree burglary does not raise an inference of gross disproportionality so as to warrant further proportionality review.

## A. Preservation

¶ 8     Relying on *People v. Walker*, 2022 COA 15, ¶ 60, the People urge us to review Williams's proportionality challenge for plain error because he filed his request for proportionality review after sentencing and the district court did not rule on it. We decline to do so. Williams did not know what his sentence would be until the district court imposed it, and he filed his request for proportionality review in the district court weeks after the sentence was imposed. *See* Crim. P. 51 ("[I]f a party has no opportunity to object to a ruling or order, the absence of an objection does not prejudice him."); *Zoll v. People*, 2018 CO 70, ¶ 17. And when, as in this case, proportionality review does not require "inquiry into specific facts" outside the appellate record, we are "as well positioned as a trial court" to conduct that review. *People v. Loris*, 2018 COA 101, ¶ 10.

## B. Applicable Law and Standard of Review

¶ 9     Both the United States and Colorado Constitutions prohibit sentences that are "'grossly disproportionate' to the crime." *Wells-Yates v. People*, 2019 CO 90M, ¶ 5 (*Wells-Yates I*) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

3

¶ 10    When a defendant challenges the proportionality of a sentence, the district court must first conduct an abbreviated proportionality review, comparing the gravity or seriousness of the offense to the harshness of the penalty to determine if the sentence gives rise to an "inference of gross disproportionality." *Id.* at ¶ 8. If it does not, no further analysis is required, and the sentence is constitutional. *Id.* at ¶ 15. An extended proportionality review — the second step of the analysis — is required only if the abbreviated proportionality review gives rise to an inference of gross disproportionality. *Id.*

¶ 11    Unless an offense is per se grave or serious, the gravity or seriousness of the offense turns on the "facts and circumstances surrounding that offense." *Id.* at ¶ 75. Relevant factors include the actual or threatened harm; whether the offense involved violence or the threat of violence; the magnitude of the crime; whether the offense was an attempted or a completed crime; whether the offense is a lesser included or greater offense; whether the defendant was an accessory, complicitor, or principal; and the defendant's culpability and motive. *McDonald v. People*, 2024 CO 75, ¶ 12.

¶ 12    In assessing the harshness of the penalty, we must consider both the length of the sentence and the defendant's eligibility for

parole, affording "great deference" to the legislature's determination. *Wells-Yates I*, at ¶¶ 14, 62. Given the "primacy of the General Assembly in crafting sentencing schemes," an abbreviated proportionality review will almost always result in a conclusion that the sentence is not unconstitutional. *Id.* at ¶ 21 (citation omitted).

¶ 13 We review de novo whether a sentence raises an inference of gross disproportionality. *Id.* at ¶ 35.

### C. Gravity or Seriousness of Offense

¶ 14 A division of this court has held that second degree burglary is not per se grave or serious. *People v. Session*, 2020 COA 158, ¶ 46. But the circumstances surrounding the second degree burglary in this case heighten the gravity or seriousness of that offense.

¶ 15 Williams stipulated in his plea agreement that he knowingly broke into three separate cabins and stole firearms and other items. *See Wells-Yates I*, ¶ 12 (noting that a defendant's mental state is relevant to their culpability). The arrest warrant affidavit details what Williams stole — including multiple firearms, firearm accessories, and ammunition — and the damage he caused to the cabins. *See People v. Wells-Yates*, 2023 COA 120, ¶ 50 (*Wells-Yates II*) (holding that court may consider arrest warrant

affidavits to determine facts and circumstances).  The offense was a completed crime, and Williams acted as a principal in committing it. *See McDonald*, ¶ 12.  And he did so while he was on probation.

¶ 16     Williams argues that his crime was not grave or serious because the cabins were unoccupied, no one was "present or likely to be present," and "the burglaries did not cause any risk of personal fear or injury."  But even assuming the cabins were unoccupied — a fact not in the record — they were owned and used.  Williams therefore harmed the victims not only by stealing and damaging their property, but also by compromising their sense of security.  *See Wells-Yates II*, ¶ 51 ("[E]ven the burglary of an unoccupied home . . . causes substantial harm to the victim and reflects a high degree of culpability on the part of the offender."); *Session*, ¶ 48 (noting that "entering an occupied . . . home and stealing the owner's personal effects . . . would be grave and serious").  Indeed, one victim expressed in their victim impact statement that "[t]he destruction and violation was overwhelming" and that they "now feel totally violated and insecure" staying in the cabin alone.  *See Wells-Yates II*, ¶ 50 (noting victims' testimony that "the burglary had a significant emotional impact on them").

¶ 17     Moreover, Williams's assertion that no one was "likely to be present" is speculation that finds no support in the record. Even if Williams *believed* the victims were not home, they could have been, or they could have arrived during the burglaries. *See id.* at ¶ 50 (concluding that "lack of violence" in a home burglary is "certainly not a given" because "[a]ny unlawful entry into another's home necessarily 'risk[s] a dangerous confrontation'" (citation omitted)).

¶ 18     In short, like in *Wells-Yates II*, Williams broke into multiple homes and "stole the residents' personal property" — including their guns and ammunition. *Id.* at ¶ 49. Such an offense is "considerably grave or serious." *Id.* at ¶ 51; *see also Session*, ¶ 48.

### D.     Harshness of Penalty

¶ 19     Given the gravity and seriousness of Williams's offense, his twelve-year sentence is not overly harsh for three reasons.

¶ 20     First, the sentence is within the presumptive range prescribed by the legislature. *See* § 18-1.3-401(1)(a)(V.5)(A), C.R.S. 2025 (providing that the presumptive range for a class 3 felony committed after July 1, 2020, is four to twelve years in prison). If a crime is grave or serious, a sentence within the statutory range is

"nearly impervious to attack" on proportionality grounds. *People v. Kennedy*, 2023 COA 83M, ¶ 15, *aff'd*, 2025 CO 63.

¶ 21    Second, although Williams was not adjudicated a habitual criminal, the district court noted that this was his tenth felony conviction, and "if [he is] in the community, [he is going to] continue to commit crimes based upon past experience going all the way back to 2004." *See Loris*, ¶ 30 (considering a defendant's "persistent disrespect and disregard for the rule of law" in conducting an abbreviated proportionality review (citation omitted)).

¶ 22    Williams attempts to downplay his criminal history by characterizing it as consisting primarily of non-violent property crimes and drug use. As he acknowledges, that generalization does not cover all his prior convictions, as he also has convictions for contributing to the delinquency of a minor and misdemeanor nonconsensual sexual contact. But regardless, the presence or absence of violence is not the sole factor in assessing "the strength of society's interest in deterring a particular crime or in punishing a particular criminal." *Rummel v. Estelle*, 445 U.S. 263, 275 (1980).

¶ 23    Finally, Williams will be eligible for parole after serving fifty percent of his sentence. § 17-22.5-403(1), C.R.S. 2025; *see also Wells-Yates I*, ¶ 14 (requiring consideration of parole eligibility).

¶ 24    Thus, comparing the gravity or seriousness of Williams's offense to the harshness of his twelve-year sentence, we conclude that the sentence does not raise an inference of gross disproportionality. *See Wells-Yates II*, ¶¶ 65-66 (concluding that forty-eight year sentence for second degree burglary as a habitual criminal did not raise an inference of gross disproportionality).

¶ 25    Williams cites three unpublished opinions from divisions of this court to argue that a comparison of his sentence to those in other cases shows that his sentence is disproportionate. Setting aside that such citations violate this court's Policy Concerning Citation of Opinions Not Selected for Official Publication — which generally prohibits citation to unpublished opinions, with limited exceptions — they are inapposite to an abbreviated proportionality review. Comparison of the defendant's sentence to sentences for other crimes in the same jurisdiction is part of an *extended* proportionality review — which comes into play only if the abbreviated proportionality review gives rise to an inference of gross

disproportionality.  *Wells-Yates I*, ¶¶ 15, 17.  Because we conclude that Williams's sentence does not give rise to such an inference, we may not conduct an extended proportionality review.  *Id.* at ¶ 15.

### III.   Disposition

¶ 26    The sentence is affirmed.

JUDGE GROVE and JUDGE YUN concur.