1
 2024 CO 75 Rodney Dewayne McDonald, Petitioner v. The People of the State of Colorado. Respondent No. 23SC381
Supreme Court of Colorado, En Banc
December 16, 2024
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 21CA750
 
 
          
 Attorneys for Petitioner: Megan A. Ring, Public Defender
 Casey Mark Klekas, Deputy Public Defender Denver, Colorado
 
 
          
 Attorneys for Respondent: Philip J. Weiser, Attorney General
 Jessica E. Ross, Assistant Solicitor General Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae ACLU of Colorado: Timothy R.
 Macdonald Emma Mclean-Riggs Laura Moraff Denver, Colorado
 
 2
 
          
 Attorneys for Amicus Curiae Daniel Loehr: Maxted Law LLC
 David G. Maxted Stephanie M. Frisinger Denver, Colorado
 
 
          
 JUSTICE HOOD delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE GABRIEL,
 JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined.
 
 
          
 OPINION
 
 
           HOOD,
 JUSTICE
 
 3
 
          ¶
 1 Rodney Dewayne McDonald asks this court to apply the
 holdings we announced in Wells-Yates v. People, 2019
 CO 90M, 454 P.3d 191, retroactively to his case, which is
 more than twenty-five years old. Doing so would allow for a
 second, more in-depth proportionality review of his sentence.
 We conclude, however, that Wells-Yates didn't
 announce new substantive rules of constitutional law, and so
 Wells-Yates's holdings don't apply
 retroactively to cases, like McDonald's, on collateral
 review.
 
 
          I.
 Facts and Procedural History
 
 
          ¶
 2 In 1996, a jury convicted McDonald of attempted first
 degree murder, second degree assault, possession of a weapon
 by a previous offender, and two habitual criminal counts. The
 habitual criminal counts were triggered by the attempted
 first degree murder conviction and based on two prior felony
 convictions: a 1995 conviction for possession of a schedule
 II controlled substance (a class 4 felony) and a 1994
 conviction for conspiracy to commit menacing (a class 6
 felony). The court sentenced McDonald to seventy-two years in
 prison. The judgment of conviction became final in 1999.
 
 
          ¶
 3 McDonald sought a proportionality review of his sentence in
 2007. The district court concluded that McDonald's
 sentence wasn't grossly
 
 4
 
 disproportionate to the crime for which he was convicted, and
 a division of the court of appeals affirmed. People v.
 McDonald, No. 07CA491 (Jan. 22, 2009).
 
 
          ¶
 4 Over a decade later, we announced our opinion in
 Wells-Yates, which altered the
 proportionality-review process in Colorado. McDonald moved
 for a second proportionality review, asserting that his
 sentence was illegal and was obtained in violation of his
 constitutional rights under the new rules announced in
 Wells-Yates. See Crim. P. 35(a), (c)(2)(I).
 The district court denied McDonald's motion, concluding
 that under Crim. P. 35(c)(3)(VI)(b), he wasn't entitled
 to a second review because he hadn't "demonstrated
 the rules announced in Wells-Yates have been
 'applied retroactively by the United States Supreme Court
 or Colorado [a]ppellate [c]ourts.'" (Quoting Crim.
 P. 35(c)(3)(VI)(b).)
 
 
          ¶
 5 On appeal, a division of the court of appeals held that,
 "to the extent Wells-Yates announced new
 constitutional rules, those rules are procedural and
 don't apply retroactively"; thus, "the district
 court properly denied McDonald's motion." People
 v. McDonald, 2023 COA 23, ¶ 2, 531 P.3d 420, 422.
 We granted McDonald's petition for certiorari review of
 the division's opinion.[1]
 
 5
 
          II.
 Analysis
 
 
          ¶
 6 We begin with the applicable standard of review. We then
 describe Colorado's habitual criminal sentencing scheme
 and the Eighth Amendment's inherent requirement that
 punishment be proportionate to the crime. After providing
 Wells-Yates's holdings, we consider whether they
 announced new substantive rules of constitutional law that
 should be applied retroactively to McDonald's case.
 
 
          A.
 Standard of Review
 
 
          ¶
 7 Whether Wells-Yates announced new substantive
 rules of constitutional law that apply retroactively to cases
 on collateral review is a question of law that we review de
 novo. See People v. Cooper, 2023 COA 113, ¶ 7,
 544 P.3d 679, 681.
 
 
          B.
 Constitutionality of Habitual Criminal Sentencing
 
 
          ¶
 8 The legislature defines crimes and their accompanying
 punishments. See, e.g., People v. Bott,
 2020 CO 86, ¶ 8, 477 P.3d 137, 139. We generally defer
 to legislative policy choices regarding sentencing. Ewing
 v. California, 538 U.S. 11, 25 (2003) (plurality
 opinion).
 
 
          ¶
 9 In Colorado, the legislature has created a statutory scheme
 that punishes recidivist offenders more harshly than
 first-time offenders. See § 18-1.3-801, C.R.S.
 (2024) ("habitual criminal statute"); see also
 People v. Watkins, 684 P.2d 234, 238 n.7 (Colo. 1984).
 Under Colorado's habitual criminal statute, courts must
 sentence
 
 6
 
 defendants from three times the presumptive maximum sentence
 to a term of life imprisonment, depending on the number and
 nature of the prior convictions ("predicate
 offenses") and the current ones ("triggering
 offenses"). § 18-1.3-801.
 
 
          ¶
 10 The legislature's authority to impose this sentencing
 scheme is circumscribed by the Eighth Amendment, which
 prohibits the state from imposing "cruel and unusual
 punishments." U.S. Const. amend. VIII; accord
 Colo. Const. art. II, § 20.[2] This prohibition
 "'flows from the basic "precept of justice that
 punishment for crime should be graduated and
 proportioned"' to both the offender and the
 offense." Miller v. Alabama, 567 U.S. 460, 469
 (2012) (quoting Roper v. Simmons, 543 U.S. 551, 560
 (2005)). And although "[t]he concept of proportionality
 is central to the Eighth Amendment," id.
 (alteration in original) (quoting Graham v. Florida,
 560 U.S. 48, 59 (2010)), it is a narrow principle that
 "forbids only extreme sentences that are 'grossly
 disproportionate' to the crime," Ewing, 538
 U.S. at 23 (quoting Harmelin v. Michigan, 501 U.S.
 957, 1001 (1991)
 
 7
 
 (Kennedy, J., concurring in part and concurring in the
 judgment)). See Rutter v. People, 2015 CO 71, ¶
 15, 363 P.3d 183, 188.
 
 
          ¶
 11 Because habitual criminal sentencing greatly increases the
 length of a defendant's sentence and strips the
 sentencing court of any discretionary authority,
 "'the Habitual Criminal Act create[s] a unique
 possibility' that a defendant will receive a sentence
 that 'is not proportionate to the crime for which [he]
 has been convicted.'" Wells-Yates, ¶
 20, 454 P.3d at 200-01 (alterations in original) (quoting
 Alvarez v. People, 797 P.2d 37, 40 (Colo. 1990),
 abrogated on other grounds by Melton v. People, 2019
 CO 89, 451 P.3d 415). Accordingly, "a defendant is
 entitled, upon request, to [a] . . . proportionality review
 of a sentence under [Colorado's] habitual criminal
 statute." People v. Deroulet, 48 P.3d 520, 522
 (Colo. 2002), abrogated on other grounds by
 Wells-Yates.
 
 
          ¶
 12 A proportionality review in Colorado is divided into two
 stages. In the first stage, known as an abbreviated
 proportionality review, courts consider the gravity or
 seriousness of the offense in relation to the harshness of
 the penalty. See Wells-Yates, ¶¶ 10-11,
 454 P.3d at 197-98; see also Solem v. Helm, 463 U.S.
 277, 292 (1983). In conducting an abbreviated proportionality
 review, courts consider whether, in combination, the
 triggering and predicate offenses "are so lacking in
 gravity or seriousness so as to suggest that the sentence is
 constitutionally disproportionate to the crime,"
 considering "the defendant's eligibility for
 parole." Rutter, ¶ 18, 363 P.3d at 188
 
 8
 
 (quoting Close v. People, 48 P.3d 528, 537 (Colo.
 2002), abrogated on other grounds by Wells-Yates).
 To determine the gravity or seriousness of an offense, courts
 may consider a number of factors, including but not limited
 to (1) "the harm caused or threatened to the victim or
 society"; (2) whether the offense involved violence or
 the threat of violence; (3) "[t]he absolute magnitude of
 the crime"; (4) whether the offense is the lesser
 included or greater offense; (5) whether the offense was an
 attempted or a completed crime; (6) whether the defendant was
 an accessory, complicitor, or principal; and (7) the
 defendant's culpability and motive. Solem, 463
 U.S. at 292-94; see also Wells-Yates, ¶ 12, 454
 P.3d at 198.
 
 
          ¶
 13 In Colorado, we have further truncated the abbreviated
 proportionality review for offenses deemed to be inherently,
 or per se, grave or serious. People v. Gaskins, 825
 P.2d 30, 37 (Colo. 1992), abrogated on other grounds by
 Wells-Yates; see also Rutter, ¶ 19, 363
 P.3d at 188; Close, 48 P.3d at 538;
 Deroulet, 48 P.3d at 524. Before
 Wells-Yates, these offenses were
 
 
 • aggravated robbery,
 
 
 • robbery,
 
 
 • burglary,
 
 
 • attempted burglary,
 
 
 • conspiracy to commit burglary,
 
 
 • felony menacing,
 
 
 • accessory to first degree murder, and
 
 9
 
 • all narcotics-related offenses.
 
 
 Gaskins, 825 P.2d at 37; Deroulet, 48 P.3d
 at 524; Close, 48 P.3d at 538. For these inherently
 serious crimes, courts don't need to "make an
 individualized determination of the gravity or seriousness of
 the offense" because it is presumed, and so courts may
 proceed directly to scrutinizing the harshness of the
 penalty. Rutter, ¶ 19, 363 P.3d at 188.
 
 
          ¶14
 If this abbreviated review gives rise to an inference of
 gross disproportionality, then a court should proceed to the
 second stage, known as an extended proportionality review.
 Harmelin, 501 U.S. at 1005 (Kennedy, J, concurring
 in part and concurring in the judgment); Rutter,
 ¶ 15, 363 P.3d at 188. During an extended
 proportionality review, courts should conduct both (1) an
 intrajurisdictional comparison of the sentences imposed on
 other criminals for different crimes and (2) an
 interjurisdictional comparison of sentences imposed for the
 same crime. Solem, 463 U.S. at 292; see also
 Rutter, ¶ 18, 363 P.3d at 188. Even then, "in
 most instances the General Assembly's determinations
 regarding the sentencing of habitual criminals will result in
 constitutionally proportionate sentences."
 Wells-Yates, ¶ 21, 454 P.3d at 201 (quoting
 Deroulet, 48 P.3d at 526).
 
 
          C.
 Wells-Yates's Holding
 
 
          ¶15
 This court announced its opinion in Wells-Yates in
 2019. We repeatedly observed that we were merely clarifying
 existing law and "correct[ing] a few
 
 10
 
 misstatements" in the caselaw. Wells-Yates,
 ¶ 3, 454 P.3d at 196; see also id. at
 ¶¶ 2 n.2, 17, 25, 37, 46 n.16, 454 P.3d at 195 n.2,
 199, 202, 204, 206 n.16. We held that
 
 
 (1) during an abbreviated proportionality review of a
 habitual criminal sentence, the court must consider each
 triggering offense and the predicate offenses together and
 determine whether, in combination, they are so lacking in
 gravity or seriousness as to raise an inference that the
 sentence imposed on the triggering offense is grossly
 disproportionate;
 
 
 (2) in determining the gravity or seriousness of the
 triggering offense and the predicate offenses, the court
 should consider any relevant legislative amendments enacted
 after the dates of those offenses, even if the amendments do
 not apply retroactively;
 
 
 (3) not all narcotic offenses are per se grave or serious;
 and
 
 
 (4) the narcotic offenses of possession and possession with
 intent [to distribute] are not per se grave or serious.
 
 
 Id. at ¶ 2, 454 P.3d at 195 (footnote omitted).
 
 
          D.
 Retroactivity of a New Rule of Constitutional Law Announced
 by the Court
 
 
          ¶
 16 When a court announces a new rule of constitutional law,
 defendants whose cases are not yet final (through direct
 appeal) may receive the benefit of the new rule. Teague
 v. Lane, 489 U.S. 288, 300, 304-05 (1989). But
 defendants seeking collateral review of their cases after
 their convictions are final generally aren't entitled to
 retroactive application of the new rule unless the rule is
 (1) substantive
 
 11
 
 (rather than procedural) or (2) a "watershed" rule
 of criminal procedure.[3] Id. at 308-11; Montgomery v.
 Louisiana, 577 U.S. 190, 200-01 (2016); Schriro v.
 Summerlin, 542 U.S. 348, 352 n.4 (2004); see also
 Edwards v. People, 129 P.3d 977, 978 (Colo. 2006). Thus,
 a court analyzing whether a rule applies retroactively must
 determine (1) whether the conviction is final; (2) whether
 the rule is new; and (3) if the rule is new, whether the rule
 meets the exceptions to non-retroactivity. Beard v.
 Banks, 542 U.S. 406, 411 (2004); People v.
 Johnson, 142 P.3d 722, 725 (Colo. 2006).
 
 
          ¶
 17 We consider each of these questions in turn.
 
 
          1.
 Was the Conviction Final?
 
 
          ¶
 18 "A conviction becomes final when the judgment of
 conviction is rendered [by the sentencing court], the
 availability of [direct] appeal exhausted, and time for
 discretionary [certiorari] review has elapsed."
 Zoske v. People, 625 P.2d 1024, 1025 (Colo. 1981).
 
 12
 
          ¶
 19 There is no dispute that McDonald's convictions became
 final in 1999, twenty years before we announced
 Wells-Yates. So, we consider whether the rules
 announced in Wells-Yates apply retroactively to
 cases on collateral review.
 
 
          2.
 Did Wells-Yates Announce
 "New" Rules?
 
 
          ¶
 20 A rule is "new" if "it breaks new ground or
 imposes a new obligation on the States or the Federal
 Government." Teague, 489 U.S. at 301. Put
 another way, "a case announces a new rule if the result
 was not dictated by precedent existing at the time
 the defendant's conviction became final."
 Id. If, "at the time the conviction became
 final, the rule was already 'apparent to all reasonable
 jurists,'" it isn't new for retroactivity
 purposes. Edwards v. Vannoy, 593 U.S. 255, 265
 (2021) (quoting Lambrix v. Singletary, 520 U.S. 518,
 528 (1997)). "The starkest example of a decision
 announcing a new rule is a decision that overrules an earlier
 case." Id.
 
 
          ¶
 21 The prosecution argues that not all of
 Wells-Yates's holdings announced new rules, but
 it concedes that two of them probably did: (1) that not all
 narcotics-related offenses are per se grave or serious and
 (2) that in conducting an abbreviated proportionality review,
 courts should consider relevant legislative amendments
 enacted after a defendant's offenses, even if those
 amendments don't apply retroactively. As to the other
 holdings, the prosecution asserts that the court simply
 clarified or confirmed existing law. Despite these
 concessions, we consider each of Wells-Yates's
 holdings.
 
 13
 
          ¶
 22 First, Wells-Yates held that courts conducting a
 proportionality review must consider the gravity of each
 triggering offense along with the gravity of any predicate
 offenses to determine whether they give rise to an inference
 of gross disproportionality when compared to the sentence
 imposed for each triggering offense. ¶¶ 27, 38, 454
 P.3d at 202, 204. This holding eliminated confusion stemming
 from Rutter, ¶¶ 24-25, 363 P.3d at 189,
 which seemed to indicate that the gravity of only the
 triggering offense mattered for proportionality-review
 purposes. See Wells-Yates, ¶¶ 35, 38, 454
 P.3d at 204. Wells-Yates also reiterated that it has
 long been the accepted practice to consider the
 proportionality of a sentence as to each conviction, not as
 an aggregate of all the sentences imposed. ¶ 74, 454
 P.3d at 210-11; see also, e.g., Close, 48
 P.3d at 539. Because we simply clarified existing law, this
 was not new.
 
 
          ¶
 23 Second, Wells-Yates instructed courts to consider
 subsequent legislative amendments to assist the gravity
 analysis. Although several divisions of our court of appeals
 had previously considered post-sentencing legislative
 reclassification of crimes in conducting an abbreviated
 proportionality review, we hadn't done so in a supreme
 court decision before Wells-Yates. See
 Wells-Yates, ¶ 44, 454 P.3d at 205 (collecting
 cases); see also, e.g., Rutter, ¶ 23,
 363 P.3d at 189. Thus, this holding announced a new rule
 under this court's precedent.
 
 14
 
          ¶
 24 Lastly, we consider Wells-Yates's holdings
 that not all narcotics-related offenses are per se grave or
 serious and that possession and possession with intent
 aren't per se grave or serious. In Wells-Yates,
 we noted that we hadn't previously used the term
 "per se grave or serious" in the proportionality
 context. ¶ 13 n.6, 454 P.3d at 198 n.6. But the
 designation of certain crimes as "per se grave or
 serious," and the use of that designation as a shortcut
 during an abbreviated proportionality review, had become
 common practice in the lower courts by the time we announced
 Wells-Yates. See id. at ¶ 62, 454 P.3d at
 208-09; see also, e.g., People v. McCulloch, 198
 P.3d 1264, 1268 (Colo.App. 2008). As we explained, however,
 the designation of all narcotics-related offenses as per se
 grave or serious derives from numerous misreadings of
 Gaskins, the recognized "genesis" of the
 designation. Wells-Yates, ¶¶ 55-56, 454
 P.3d at 207-08.
 
 
          ¶
 25 By removing those offenses from the list of per se grave
 or serious crimes and by explaining that the per se
 designation "must be reserved for those rare crimes
 which, based on their statutory elements, necessarily involve
 grave or serious conduct" (meaning, "the crime
 would be grave or serious in every potential factual
 scenario"), Wells-Yates essentially returned
 the per se grave or serious designation to the standard
 provided by Gaskins. Id. at ¶¶
 63, 69-70, 454 P.3d at 209-10; see also Gaskins, 825
 P.2d at 36-37. Still, Wells-Yates altered the
 standard for assessing whether crimes should be designated
 per se grave or
 
 15
 
 serious and narrowed the "per se" designation for
 narcotics-related offenses. Thus, these holdings announced
 "new" rules. See Edwards, 593 U.S. at 266
 (concluding that the court had announced a new rule when it
 brought legal interpretation back in line with the original
 meaning of the Sixth Amendment).
 
 
          ¶
 26 Even so, as noted above, for these new rules to apply to
 McDonald retroactively, they must be substantive. We
 turn our attention to that final consideration now.
 
 
          3.
 Did Wells-Yates Announce
 Substantive Rules?
 
 
          ¶
 27 A rule is substantive "if it alters the range of
 conduct or the class of persons that the law punishes."
 Summerlin, 542 U.S. at 353. Substantive rules
 include "decisions that narrow the scope of a criminal
 statute by interpreting its terms as well as constitutional
 determinations that place particular conduct or persons
 covered by the statute beyond the State's power to
 punish." Id. at 351-52 (citation omitted);
 see also Montgomery, 577 U.S. at 198. "Such
 rules apply retroactively because they 'necessarily carry
 a significant risk that a defendant' . . . faces a
 punishment that the law cannot impose upon him."
 Summerlin, 542 U.S. at 352 (quoting Bousley v.
 United States, 523 U.S. 614, 620 (1998)); accord
 Montgomery, 577 U.S. at 208-09.
 
 
          ¶
 28 Conversely, a rule is procedural if it "regulate[s]
 only the manner of determining the defendant's
 culpability." Summerlin, 542 U.S. at 353. Such
 rules
 
 16
 
 don't "produce a class of persons convicted of
 conduct the law does not make criminal . . . but merely raise
 the possibility that someone convicted with use of the
 invalidated procedure might have been acquitted
 otherwise." Welch v. United States, 578 U.S.
 120, 129 (2016) (quoting Summerlin, 542 U.S. at
 352).
 
 
          ¶
 29 Wells-Yates didn't remove any range of
 conduct or class of individuals from the possibility of
 habitual criminal sentencing. Cf. Welch., 578 U.S.
 at 129-30 (concluding that the Court announced a substantive
 rule in Johnson v. United States, 576 U.S. 591
 (2015), because "Johnson changed the
 substantive reach of the Armed Career Criminal Act, altering
 'the range of conduct or the class of persons that the
 [Act] punishes'"; meaning, "the same person
 engaging in the same conduct is no longer subject to the
 Act" (alteration in original) (quoting
 Summerlin, 542 U.S. at 353)). No one who was
 sentenced under the habitual criminal statute before
 Wells-Yates was ineligible for such sentencing after
 Wells-Yates. Instead, Wells-Yates clarified
 how a court should evaluate the proportionality of a habitual
 criminal's sentence.
 
 
          ¶
 30 After Wells-Yates, courts can no longer
 categorically assume all narcotics-related offenses are grave
 or serious; instead, courts must now consider the individual
 facts of narcotics-related predicate and triggering offenses
 to determine if they are grave or serious in each instance.
 Narcotics-related offenses may still trigger habitual
 criminal sentencing, and a court conducting an abbreviated
 
 17
 
 proportionality review may still conclude that the offenses
 at issue are sufficiently grave that the harshness of the
 sentence imposed under the habitual criminal statute
 isn't grossly disproportionate.
 
 
          ¶
 31 Similarly, Wells-Yates's instruction for
 courts to consider post-offense legislative amendments when
 evaluating the gravity or seriousness of offenses during an
 abbreviated proportionality review didn't remove any
 range of conduct or class of offenders from the state's
 ability to punish under the habitual criminal statute. Nor
 did it create a significant risk that a class of habitual
 criminal sentences would be grossly disproportionate. Rather,
 it simply reminded courts to consider society's evolving
 views on the gravity or seriousness of certain crimes when
 conducting an abbreviated proportionality review.
 
 
          ¶
 32 Thus, Wells-Yates's holdings removing
 narcotics-related offenses from the per se grave or serious
 list and instructing courts to consider post-sentencing
 legislative amendments merely regulated how habitual criminal
 sentences are to be evaluated during an abbreviated
 proportionality review. See Summerlin, 542 U.S. at
 353-55 (concluding that the new rule was procedural because
 the range of conduct punishable by death was the same before
 the rule as it was after); Johnson, 142 P.3d at
 724-25 (same); cf. Welch, 578 U.S. at 131 ("A
 change [that alters the scope of the underlying proscription]
 will 'necessarily carry a significant risk that a
 defendant stands convicted of "an act that the law does
 not make
 
 18
 
 criminal."'" (quoting Bousley, 523
 U.S. at 620)). But concluding that a sentence is grossly
 disproportionate will likely remain the exception rather than
 the rule. See generally Wells-Yates, ¶¶
 23-27, 454 P.3d at 201-02; see also, e.g.,
 Gaskins, 825 P.2d at 36-37; Rutter, ¶
 15, 363 P.3d at 188. The Wells-Yates rules are,
 therefore, "prototypical procedural rules."
 Johnson, 142 P.3d at 725 (quoting
 Summerlin, 542 U.S. at 353).
 
 
          ¶
 33 Contrast this conclusion with Montgomery, in
 which the Supreme Court concluded that the rule announced in
 Miller was substantive and applied retroactively to
 cases on collateral review. Montgomery, 577 U.S. at
 212. The Miller Court held "that mandatory life
 without parole for those under the age of [eighteen] at the
 time of their crimes violates the Eighth Amendment's
 prohibition on 'cruel and unusual punishments.'"
 567 U.S. at 465. In concluding that this new rule was
 substantive, the Montgomery Court noted that
 "[a]lthough Miller did not foreclose a
 sentencer's ability to impose life without parole on a
 juvenile, the [Miller] Court explained that a
 lifetime in prison is a disproportionate sentence for all but
 the rarest of children, those whose crimes reflect
 '"irreparable corruption."'"
 Montgomery, 577 U.S. at 195 (quoting
 Miller, 567 U.S. at 479-80). Thus, Miller
 deprived the state of the power to impose mandatory life
 without parole sentences for a certain class of offenders.
 Id. at 201, 208-12; see also Welch, 578
 U.S. at 129-30.
 
 19
 
          ¶
 34 We conclude that the new rules Wells-Yates
 announced are procedural, not substantive. Accordingly,
 Wells-Yates's holdings don't apply
 retroactively to cases on collateral review, and McDonald
 isn't entitled to a second proportionality review of his
 habitual criminal sentence.
 
 
          III.
 Conclusion
 
 
          ¶
 35 The judgment of the court of appeals is affirmed.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We granted certiorari to review the
 following issue:
 
 
 1. Whether Wells-Yates v. People, 2019 CO
 90M, 454 P.3d 191, announced a new, substantive rule of
 constitutional law that applies retroactively.
 
 
 [2] Because McDonald didn't raise to
 the trial court his argument that the Colorado Constitution
 provides broader protection than its federal counterpart,
 it's not properly before us, and we decline to address
 it. See Martinez v. People, 244 P.3d 135, 140 (Colo.
 2010) (vacating the portion of an opinion that reached the
 merits of an unpreserved constitutional claim because,
 "[t]o preserve a Colorado Constitutional argument for
 appeal, . . . a defendant must make an objection sufficiently
 specific to call the attention of the trial court to the
 potential Colorado Constitutional error").
 
 
 [3] The United States Supreme Court has
 abolished the watershed rule exception because
 "[c]ontinuing to articulate a theoretical exception that
 never actually applies in practice offers false hope to
 defendants, distorts the law, misleads judges, and wastes the
 resources of defense counsel, prosecutors, and courts."
 Edwards v. Vannoy, 593 U.S. 255, 272 (2021). The
 prosecution asks us to follow suit. But the watershed rule
 exception isn't implicated by the facts of this case, so
 we don't address it.
 
 
 ---------