24CA2149 Peo v Nesterenko 01-15-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2149
Mesa County District Court No. 21CR1209
Honorable Matthew D. Barrett, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Aleksandr Nesterenko,

Defendant-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 15, 2026

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Aleksandr Nesterenko, Pro Se

¶ 1     Defendant, Aleksandr Nesterenko, appeals the order denying his Crim. P. 35(c) motion without a hearing.  We affirm.

## I.     Background

¶ 2     Nesterenko was charged with several crimes, including first degree burglary and attempted first degree assault, for allegedly breaking into the victims' house and shooting a gun into the home.

¶ 3     Nesterenko pleaded guilty to first degree burglary and an amended count of second degree assault in exchange for dismissal of the remaining charges.[1]  In the plea agreement, the parties agreed that the charges did not require a mandatory prison sentence.  But the written plea advisement provided that if Nesterenko was incarcerated, he would be subject to an aggravated maximum sentence of twenty-four years (and a minimum sentence of eight years) because he was on bond for another felony at the time of his offense.  The district court also explained at the providency hearing that if it sentenced Nesterenko to prison, the second degree assault sentence would be for five to sixteen years under the crime of violence statute, § 18-1.3-406, C.R.S. 2025.

---

[1] Nesterenko also pleaded guilty to felony driving under the influence as a fourth or subsequent offense in another case.

1

¶ 4    Nesterenko asserted at the providency hearing that he was "blacked out" from alcohol consumption at the time of his offenses and could not remember what he had done. But he agreed there was sufficient evidence to prove the offenses beyond a reasonable doubt. The district court accepted the guilty plea, finding that Nesterenko had entered it knowingly, intelligently, and voluntarily.

¶ 5    The court sentenced Nesterenko to concurrent prison sentences of fifteen years for the first degree burglary and sixteen years for the second degree assault.

¶ 6    Nesterenko appealed his convictions, arguing that his guilty plea was not knowing, voluntary, and intelligent because he had been misled as to his maximum sentence under the plea agreement. A division of this court dismissed the appeal, concluding that Nesterenko's challenge to his guilty plea was not properly before the court on direct appeal. *People v. Nesterenko*, (Colo. App. No. 22CA1253, July 20, 2023) (not published pursuant to C.A.R. 35(e)).

¶ 7    Nesterenko then filed a timely Crim. P. 35(c) motion for postconviction relief. He asserted that his counsel had provided ineffective assistance by failing to conduct an adequate investigation and by erroneously advising him to plead guilty. He

claimed that additional investigation would have proved his innocence and exposed fraud and governmental misconduct. He also argued that his plea was not knowing, voluntary, and intelligent due to the ineffective assistance of counsel and that his sentence was unconstitutionally disproportionate to his crimes.

¶ 8 The district court denied the motion without appointing counsel or conducting a hearing. It concluded that Nesterenko's claims of ineffective assistance of counsel were conclusory, speculative, and contradicted by the record, and that Nesterenko had failed to sufficiently allege prejudice. For similar reasons, the court concluded that Nesterenko had not alleged facts sufficient to overcome the court's prior finding that the plea was knowing, voluntary, and intelligent. And it concluded that Nesterenko's sentence did not raise an inference of gross disproportionality given the seriousness of his conduct, his criminal history, the impact on the victims, the mitigating evidence, and his parole eligibility.

## II. Legal Standard and Standard of Review

¶ 9 A Crim. P. 35(c) motion may be denied without a hearing when "the motion and the files and record of the case show to the satisfaction of the court that the defendant is not entitled to relief."

Crim. P. 35(c)(3)(IV). This standard is satisfied if (1) the allegations are bare and conclusory; (2) the allegations, even if true, do not warrant relief; or (3) the record directly refutes the defendant's claims. *People v. Duran*, 2025 COA 34, ¶ 15. A defendant need not set forth evidentiary support for the allegations in the motion but must assert facts that, if true, would provide a basis for relief. *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).

¶ 10 We review de novo the district court's denial of a Crim. P. 35(c) motion without a hearing. *People v. Cali*, 2020 CO 20, ¶ 14.

### III. Ineffective Assistance of Counsel

¶ 11 Nesterenko argues that the district court erred by denying his claims for ineffective assistance of counsel without a hearing. He contends that his counsel was ineffective by (1) failing to conduct a reasonable investigation; (2) providing him "bad plea advice"; and (3) failing to properly represent him at sentencing. We disagree.

### A. Legal Standard

¶ 12 To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). Under the first prong of

this test, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Under the second prong, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant who pleaded guilty must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also People v. Sifuentes*, 2017 COA 48M, ¶ 20.

¶ 13    An ineffective assistance claim may be denied without a hearing if the defendant's allegations fail to satisfy either prong of the *Strickland* test. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003). Allegations of deficient performance are insufficient if they are "merely conclusory, vague, or lacking in detail." *People v. Osorio*, 170 P.3d 796, 799 (Colo. App. 2007). A claim based on counsel's failure to investigate must specify "what additional investigation counsel should have done, what the results of those efforts would have been, and how they would have affected the outcome of the case." *People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003).

## B. Failure to Investigate

¶ 14    We agree with the district court that Nesterenko's ineffective assistance claims alleging a deficient investigation by defense counsel and a corresponding failure to retain expert witnesses were conclusory, vague, and speculative.

¶ 15    Nesterenko claimed that if his counsel had conducted a more thorough investigation and retained experts to assist in doing so, he could have presented a viable defense by showing that the allegations against him were fabricated. Among other things, he asserted that such an investigation — including a reenactment of the shooting and ballistic testing — would have revealed false information in police reports, "concealment of exculpatory evidence," and "a substantial volume of impeaching evidence that would have discredited any statements presented by" the victims.

¶ 16    But Nesterenko provided no factual allegations to support these conclusory claims. He offered only the vague assertion that a "ballistic[s] expert," "forensic evidence," and "material witness testimony" would have shown that one of the victims fired the gun and tried to frame him. He did not say how it would have done so. He did not identify *what* the results of the investigation and expert

analysis would have been, much less how it would have shown that he was innocent or that the victims' allegations were fabricated. *See Zuniga,* 80 P.3d at 973. Nor did he identify what exculpatory information had been concealed or what impeaching evidence would have been revealed by further investigation. Without such information, Nesterenko's allegations are too "conclusory, vague, [and] lacking in detail" to support a claim. *Osorio,* 170 P.3d at 799.

¶ 17 Moreover, to the extent Nesterenko relies on his own assertion of innocence, he acknowledged at the providency hearing and at sentencing that he was blacked out during the incident and had no memory of it. So, without any details about what a further investigation would have shown, even Nesterenko's claim that he is factually innocent is itself speculative. *See People v. Stovall,* 2012 COA 7M, ¶ 28 (holding that defendant's self-serving testimony is insufficient to establish ineffective assistance of counsel).

### C. Plea Advisement and Negotiations

¶ 18 Nesterenko next asserts that his counsel was ineffective because he failed to negotiate a more favorable plea deal and erroneously advised Nesterenko that he faced only two to six years in prison. To the extent this claim is based on counsel's allegedly

inadequate investigation, it fails for the reasons above: Nesterenko did not adequately allege that counsel's investigation was deficient or that further investigation would have resulted in a more favorable plea. To the extent the claim is based on counsel's alleged misadvisement regarding Nesterenko's possible sentence, it is refuted by the record.

¶ 19    The plea agreement provided that the charges to which Nesterenko was pleading guilty did not require a *mandatory* prison sentence under section 18-1.3-406. But the accompanying advisement explained that *if* the court sentenced Nesterenko to a term of incarceration, it must sentence him within the aggravated range of eight to twenty-four years if he was on bond for another felony at the time of his offenses (which he indisputably was).

¶ 20    The district court then clarified any ambiguity at the providency hearing by explaining that if Nesterenko was sentenced to prison for the second degree assault charge, he would be subject to the crime of violence statute and a sentencing range of five to sixteen years, *not* the standard two- to six-year range. Nesterenko confirmed that he understood. The district court also advised Nesterenko that he faced up to twenty-four years on the first degree

burglary charge under aggravated circumstances. Nesterenko again confirmed that he understood the possible penalties, giving no indication that the court's advisement contradicted his understanding or the advice he had received from counsel.

¶ 21　　Thus, whether or not Nesterenko was properly advised by his counsel regarding the maximum sentences, he was properly advised by the district court. When a defendant receives advice from counsel that differs from that in the written plea documents or the district court's advisement at the providency hearing, the defendant has "an affirmative obligation to request clarification from the court." *People v. DiGuglielmo*, 33 P.3d 1248, 1251 (Colo. App. 2001); *see also People v. Phipps*, 2016 COA 190M, ¶ 52. The failure to do so precludes a postconviction claim based on counsel's misadvisement. *DiGuglielmo*, 33 P.3d at 1251; *Phipps*, ¶¶ 50-52.

¶ 22　　Because Nesterenko did not point out any discrepancies between the district court's advisement and his counsel's advisement — and indeed, confirmed his understanding of the applicable sentencing ranges — he cannot raise the issue now.

### D.   Sentencing

¶ 23    Nesterenko's claim of ineffective assistance of counsel at sentencing fails for the same reasons.  He contends that counsel was ineffective by misleading him as to the consequences of pleading guilty and allowing the prosecution to "breach its promise" of a two- to six-year sentence.  But as we have explained, Nesterenko was correctly advised by the district court of the possible sentence.  And the plea agreement did not provide for a two- to six-year sentence.  Nor did it indicate that the crime of violence statute would not apply.  Rather, it said only that the crime of violence statute did not require a *mandatory* prison sentence — a point with which the district court agreed.  The district court clarified at the providency hearing that the crime of violence statute *would* apply if the court opted to sentence Nesterenko to prison.

¶ 24    Nesterenko also asserted in his motion that his counsel should have retained a "mitigation expert" to assist with sentencing and presented a stronger case of mitigation.  But other than generally reasserting his claim of innocence, contrary to his guilty plea, he did not specify what additional mitigation evidence could have been presented or how it would have affected his sentence.  Such a vague

reference to unspecified mitigating information cannot sustain an ineffective assistance claim. *See Osorio*, 170 P.3d at 799.

## IV.    Voluntariness of Plea

¶ 25    Nesterenko's challenge to the voluntariness of his plea is derivative of his ineffective assistance claims. In short, he contends that his counsel's ineffective assistance made his plea "involuntary, uninformed, and unintelligent" because he was deceived into believing his maximum sentence was two to six years. Because we have concluded that the district court correctly denied Nesterenko's ineffective assistance claims, we likewise conclude that it correctly denied his challenge to the validity of his plea on the same grounds.

¶ 26    And to the extent Nesterenko asserts that the plea agreement and written advisement were incorrect or misleading, the district court clarified any ambiguity at the providency hearing by advising Nesterenko that (1) the crime of violence statute would apply if he were sentenced to prison; (2) the sentence for the second degree assault charge would be five to sixteen years; and (3) the maximum sentence for the first degree burglary charge was twenty-four years.

¶ 27    Nesterenko also alleged in his motion that counsel coerced him to plead guilty. But the only purported coercion he identifies is

11

counsel's advisement that he would likely be convicted and face a greater sentence if he went to trial. Such an advisement does not invalidate a guilty plea. *See People v. Lopez*, 2025 COA 73, ¶ 30; *People v. McCormick*, 881 P.2d 423, 427 (Colo. App. 1994) (explaining that the "desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities" does not make a guilty plea invalid). Moreover, Nesterenko's allegations of coercion are directly refuted by his unequivocal confirmation at the providency hearing that no one had coerced him into pleading guilty. *See People v. Canody*, 166 P.3d 218, 220 (Colo. App. 2007).

## V.     Proportionality of Sentence

¶ 28     Nesterenko finally argues that his sixteen-year sentence is grossly disproportionate to his offenses. We disagree.

### A.     Applicable Law and Standard of Review

¶ 29     Both the United States and Colorado Constitutions prohibit "extreme sentences that are 'grossly disproportionate' to the crime." *Wells-Yates v. People*, 2019 CO 90M, ¶ 5 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

¶ 30     When a defendant challenges the proportionality of a sentence, the district court must first conduct an abbreviated proportionality

review, comparing the gravity or seriousness of the offense to the harshness of the penalty to determine if the sentence gives rise to an "inference of gross disproportionality." *Id.* at ¶ 8. If it does not, no further analysis is required and the sentence is constitutional. *Id.* at ¶ 15. An extended proportionality review — the second step of the analysis — is required only if the abbreviated proportionality review gives rise to an inference of gross disproportionality. *Id.*

¶ 31 Ordinarily, the gravity or seriousness of an offense requires a fact-based inquiry into several factors, including the harm caused or threatened to the victim or society; whether the offense involved violence or the threat of violence; whether the offense was an attempted or a completed crime; whether the defendant was an accessory, complicitor, or principal; and the defendant's culpability and motive. *McDonald v. People*, 2024 CO 75, ¶ 12. But when an offense is "grave or serious in every potential factual scenario," it is per se grave or serious, and the court may proceed directly to consideration of the harshness of the penalty. *Wells-Yates*, ¶ 13.

¶ 32 In assessing the harshness of the penalty, the court should consider both the length of the sentence and the defendant's eligibility for parole, affording "great deference" to the legislature's

determination. *Id.* at ¶¶ 14, 62. Given the "primacy of the General Assembly in crafting sentencing schemes," an abbreviated proportionality review will almost always result in a conclusion that the sentence is not unconstitutional. *Id.* at ¶ 21 (citation omitted).

¶ 33    We review de novo whether a sentence raises an inference of gross disproportionality. *Id.* at ¶ 35.

## B.    Analysis

¶ 34    In arguing that his sentence is grossly disproportionate, Nesterenko does not distinguish between his fifteen-year sentence for first degree burglary and his sixteen-year sentence for second degree assault. But construing Nesterenko's arguments broadly to encompass both sentences, we agree with the district court that neither raises an inference of gross disproportionality.

¶ 35    Beginning with the gravity or seriousness of the offenses, first degree burglary is per se grave and serious, so we need not consider the facts of that offense. *See Wells-Yates*, ¶¶ 13, 65. And although second degree assault (intentionally causing bodily injury with a deadly weapon) has not been deemed per se grave or serious, *see Melton v. People*, 2019 CO 89, ¶ 28 n.5, it was grave and serious under the circumstances of this case. As set forth in the arrest

14

warrant affidavit, which Nesterenko stipulated was part of the factual basis for the offense, Nesterenko threatened the victims with a gun and fired the gun into their house while "blacked out" from alcohol and on bond for another felony. Thus, even if the victims were not in fact injured, the offense involved violent conduct, or at a minimum, the *threat* of violence. *See McDonald*, ¶ 12. Nesterenko's assertions to the contrary are based entirely on his protestations of innocence and his denial of the acts to which he pleaded guilty.

¶ 36 Given the gravity and seriousness of Nesterenko's offenses, his fifteen-year and sixteen-year sentences are not overly harsh. First, the sentences were within the range of sentences prescribed by the legislature. *See People v. Kennedy*, 2023 COA 83M, ¶ 15 (*cert. granted* Aug. 5, 2024) ("[I]f a crime is grave or serious, and so long as the penalty is within the statutory range, the sentence is nearly impervious to attack [on proportionality grounds]."). Second, although Nesterenko was not adjudicated a habitual offender, the district court noted that he "has a significant criminal history that includes felony and misdemeanor convictions from Oklahoma and Colorado, dating back to 2004." *See People v. Loris*, 2018 COA 101, ¶ 30 (considering a defendant's "persistent disrespect and disregard

for the rule of law" in making a proportionality determination (citation omitted)). Third, Nesterenko will be eligible for parole after serving seventy-five percent of his first degree burglary sentence. *See* § 17-22.5-403(2.5)(a), C.R.S. 2025; *Wells-Yates*, ¶ 14.

¶ 37 Thus, comparing the gravity or seriousness of Nesterenko's offenses to the harshness of his sentences, we conclude that the sentences do not raise an inference of gross disproportionality.

## VI. Disposition

¶ 38 The order is affirmed.

JUDGE GROVE and JUDGE YUN concur.