23CA1219 Peo v Pulliam 04-09-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1219
Larimer County District Court No. 18CR265
Honorable Juan G. Villaseñor, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Donny Ray Pulliam,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE LUM
J. Jones and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

Philip J. Weiser, Attorney General, Katharine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Chelsea E. Mowrer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Donny Ray Pulliam, appeals the district court's order concluding that his habitual criminal sentences don't raise an inference of gross disproportionality.  We affirm.

## I.    Background

¶ 2    In 2018, Pulliam met with Jordan Williams, Justin Bigfeather, and Dylan Salas to buy drugs from Williams.  *People v. Pulliam*, slip op. at ¶ 2 (Colo. App. No. 19CA0347, Aug. 5, 2022) (not published pursuant to C.A.R. 35(e)).  During the meeting, Pulliam pointed his gun at Bigfeather and Salas and told them to give him all their "shit."  *Id.* at ¶¶ 2, 4-6.  At some point during the confrontation, Pulliam's gun discharged, killing Salas.  *Id.* at ¶¶ 2, 5.  The jury convicted Pulliam of first degree murder (felony murder) of Salas, attempted first degree murder (after deliberation) of Bigfeather, and aggravated robbery of Williams.  *Id.* at ¶ 3; *see* § 18-3-102(1)(a), (b), C.R.S. 2018; § 18-4-302(1)(b), C.R.S. 2021; § 18-2-101, C.R.S. 2021.

¶ 3    After his conviction, the district court held a separate hearing at which it adjudicated Pulliam a habitual criminal based on three prior felony convictions: (1) accessory to a crime (riot in a detention center) under section 18-8-105(1), (5), C.R.S. 2010; (2) theft (more

1

than $1,000 but less than $20,000) under section 18-4-401(1), (2)(c), C.R.S. 2010; and (3) attempt to commit second degree assault on a peace officer under section 18-3-203(1)(f), C.R.S. 2006.

¶ 4    At the habitual criminal hearing, and in a separate motion, Pulliam moved for an extended proportionality review. During its abbreviated proportionality review, the court concluded that Pulliam's crimes — the triggering offenses of aggravated robbery and attempted first degree murder and the three predicate offenses — were grave or serious when considered in "totality." Given that, the court also concluded that the habitual criminal "combined" sentence for aggravated robbery and attempted murder did not raise an inference of gross disproportionality. The court sentenced Pulliam consecutively to life without the possibility of parole for felony murder, sixty-four years for aggravated robbery, and ninety-six years for attempted first degree murder. *See* §§ 18-3-102(1)(a), (b), 18-2-101, 18-4-302(1)(b).

¶ 5    As relevant here, Pulliam appealed the habitual criminal sentences.[1] *Pulliam*, No. 19CA0347, slip op. at ¶¶ 47-58. A division

---

[1] Pulliam didn't challenge his conviction or sentence for felony murder.

of this court remanded for a new proportionality review because (1) the record "lack[ed] ample support to conclude that all three predicate crimes were grave [or] serious," and (2) the district court erroneously considered the aggravated robbery and attempted murder sentences together rather than separately. *Id.* at ¶¶ 53-58.

¶ 6 After conducting a new abbreviated proportionality review on remand, the district court made the following findings and conclusions about Pulliam's triggering offenses:

- Aggravated robbery is per se grave or serious.

- Attempted first degree murder is per se grave or serious because it is grave or serious in every potential factual scenario. *Wells-Yates v. People*, 2019 CO 90M, ¶ 63 (*Wells-Yates I*).

- In the alternative, Pulliam's attempted first degree murder conviction was grave or serious under the facts of the case because Pulliam (1) took a substantial step with the requisite intent to shoot Bigfeather; and (2) as principal actor, was solely culpable for the robbery of the drugs and using or threatening gun violence.

3

¶ 7     As to Pulliam's predicate offenses, the district court concluded that while none were per se grave or serious, the attempted second degree assault and accessory to crime offenses were grave or serious under the facts and circumstances of each incident. (The court declined to conclude that Pulliam's theft conviction was grave or serious because the record lacked information about Pulliam's role in the theft, and the information about the value of the stolen items was inconsistent.)

¶ 8     Finally, considering together each of Pulliam's triggering offenses with his predicate offenses, the court determined that Pulliam's triggering offenses involved violence, caused great harm to society, and occurred during a murder. And Pulliam's predicate offenses established his "predilection for violence, his disregard for human life, and his propensity toward repeated criminal conduct." The court therefore concluded that Pulliam's habitual sentences didn't give rise to an inference of gross disproportionality.

## II.     Applicable Law and Standard of Review

¶ 9     When a defendant is convicted of a felony (a triggering offense), he may be adjudicated a habitual criminal if he has been convicted of three or more previous felonies arising out of separate and

distinct criminal episodes (predicate offenses).  § 18-1.3-801(2)(a)(I), C.R.S. 2025.  In that event, the court must impose a prison sentence for the triggering offense of a term that is four times the maximum of the presumptive range for that offense. § 18-1.3-801(2)(a)(I)(A).

¶ 10    The legislature has broad authority to regulate the sentencing of habitual criminals.  *Wells-Yates I*, ¶ 21.  However, that authority "is limited by the principle of proportionality that is embedded in the constitutional prohibition against the infliction of cruel and unusual punishment."  *Wells-Yates I*, ¶ 1; *see* U.S. Const. Amend. VIII; Colo. Const. art. II, § 20.  "Proportionality is a 'foundational "precept of justice"' that 'dictates that the punishment should fit the crime.'"  *People v. Wells-Yates*, 2023 COA 120, ¶ 14 (*Wells-Yates II*) (citations omitted).

¶ 11    "When a defendant challenges the proportionality of a sentence, the court must first conduct an abbreviated proportionality review."  *Id.* at ¶ 15.  "If there are multiple triggering offenses, the reviewing court must look at the sentence imposed for each such offense and engage in a proportionality review of that

5

sentence because each sentence represents a separate punishment for a distinct and separate crime." *Wells-Yates I*, ¶ 24.

¶ 12      During an abbreviated proportionality review, the court must consider (1) the gravity or seriousness of the triggering offense and the predicate offenses and (2) the harshness of the penalty for the triggering offense. *Id.* at ¶¶ 23-24. The court then determines whether the triggering and predicate offenses, "considered together, are so lacking in gravity or seriousness" as to give rise to an inference of gross disproportionality. *Id.* at ¶ 24. If the answer is "yes," the court then conducts an extended proportionality review. *Wells-Yates II*, ¶ 15.

¶ 13      Certain offenses are considered per se grave or serious, meaning courts need not specifically analyze gravity or seriousness and may skip to the second step — assessing the harshness of the penalty. *Wells-Yates I*, ¶¶ 13, 63. For an offense that isn't per se grave or serious, the court must assess the gravity or seriousness by reviewing the facts and circumstances attending the commission of the crime. *People v. Duran*, 2025 COA 34, ¶ 29; *People v. Hargrove*, 2013 COA 165, ¶ 12, *abrogated on other grounds by Wells-Yates I*, ¶¶ 16-17. In doing so, the court may consider

6

multiple factors, including, but not limited to (1) the harm caused or threatened to the victim or society; (2) whether the offense involved violence or the threat of violence; (3) whether the offense was an attempted or a completed crime; (4) whether the defendant was an accessory, complicitor, or principal; and (5) the defendant's culpability and motive. *McDonald v. People*, 2024 CO 75, ¶ 12.

¶ 14    In assessing the gravity and seriousness of a crime, the district court isn't limited to considering "the elements of the offense and other facts . . . found by a jury or admitted by the defendant." *Wells-Yates II*, ¶ 21.  Rather, a court may consider the facts and circumstances that "'surround[]'" or "flesh out" the offense.  *Id.* at ¶¶ 22, 27 (citation omitted).  For example, a division of this court has concluded that when a defendant is convicted of possession of a controlled substance, the court may consider the defendant's distribution of that substance, at least when the distribution "is of the same drugs and occurs at the same time as the possession offense."  *Id.* at ¶ 30.  However, a court cannot consider the defendant's commission of "factually and legally unrelated crimes."  *Id.* at ¶ 28.

¶ 15    The gravity and seriousness inquiry is "not binary" but is one of degree, entailing a consideration of "*how* serious . . . the offense" is "as a precursor to the next step of balancing the seriousness of the offense against the harshness of the penalty." *Id.* at ¶ 36.

¶ 16    When considering the harshness of the penalty, "a great deal of deference is due to legislative determinations regarding sentencing." *People v. Deroulet*, 48 P.3d 520, 523 (Colo. 2002), *abrogated on other grounds by Wells-Yates I*, ¶¶ 16-17. Accordingly, "in almost every case, the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate, thereby preserving the primacy of the General Assembly in crafting sentencing schemes." *Id.* at 526.

¶ 17    If an abbreviated proportionality review reveals no inference of gross disproportionality, no further analysis is required. *Wells-Yates I*, ¶ 15; *Close v. People*, 48 P.3d 528, 542 (Colo. 2002), *abrogated on other grounds by Wells-Yates I*, ¶¶ 16-17.

¶ 18    Whether a sentence is grossly disproportionate is a question of law that we review de novo. *Wells-Yates I*, ¶ 35. But "[w]e defer to the district court's factual findings, including those concerning the facts and circumstances surrounding the offense, if they are

8

adequately supported by competent evidence in the record."
*Wells-Yates II*, ¶¶ 3, 17.

### III.  Analysis

¶ 19    Pulliam contends that the district court went outside the scope of facts and circumstances it was permitted to consider when assessing the gravity and seriousness of his triggering offense of attempted first degree murder and his predicate offenses of attempted second degree assault and accessory to crime.  Relatedly, he argues that the court erred when it determined that the sentences don't give rise to an inference of gross disproportionality. (The district court correctly determined that aggravated robbery is per se grave or serious, *Wells-Yates I*, ¶ 65, and Pulliam doesn't contend otherwise.).

### A.    Triggering Offense — Attempted First Degree Murder

¶ 20    Pulliam argues that the district court improperly considered facts and circumstances relating to the robbery and the completed murder when assessing whether the attempted murder was grave or serious under the circumstances surrounding its commission. Given that all three crimes occurred in the space of "maybe a minute or so," it isn't entirely clear which facts Pulliam thinks the

9

district court shouldn't have considered. Nevertheless, we discern no basis for reversal.

¶ 21     Even if we don't consider the completed murder, Pulliam still pointed a loaded gun at Bigfeather after deliberation and with the intent to kill him. *See* § 18-2-101(1), C.R.S. 2025 (a person commits criminal attempt if he, with the mental state required for commission of the offense, engages in conduct constituting a substantial step toward the commission of the offense); § 18-3-102(1)(a), C.R.S. 2025 (A person commits first degree murder if, "[a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person.").

¶ 22     To the extent Pulliam contends that it's improper to consider the robbery, we disagree. Pulliam's motive for threatening Bigfeather (and Salas) with the gun was to steal drugs. *See* *McDonald*, ¶ 12. The crime therefore involved a threat of violence and significant harm to society. *See id.* Further, Pulliam was the principal actor and was solely culpable for the crime. *See id.* Accordingly, we agree with the district court that the attempted murder was grave or serious as committed.

10

¶ 23    Because of our resolution of this argument, we need not consider whether the district court erred by concluding that attempted first degree murder is per se grave or serious.

B.    Predicate Offense — Attempted Second Degree Assault

¶ 24    The court relied on the arrest affidavit to make the following factual findings about the incident underlying Pulliam's attempted second degree assault conviction:

- Pulliam was caught breaking into vehicles when the police arrived at the scene.

- While fleeing the scene in his own vehicle, Pulliam drove straight at a police officer's vehicle while the officer was inside; the officer had to "back out of the way" to avoid being hit.

- Pulliam's motive in committing the crime was to elude police, and he ultimately crashed his vehicle and ran from police before being apprehended.

¶ 25    The district court concluded that Pulliam's conduct was grave or serious.  It noted that, while Pulliam's attempted assault constituted a low-level felony, he nonetheless took a "substantial step" to commit the crime of assault.  The court went on to say that

Pulliam's conduct threatened substantial harm to society because he demonstrated "utter disregard for police" and could have caused "serious bodily injury to th[e] officer."

¶ 26 Pulliam first contends that the district court erred by considering (1) that he was breaking into cars prior to the arrival of law enforcement and (2) that he attempted to flee after he crashed his car. Relying on *Wells-Yates II*, Pulliam argues that consideration of these aggravating facts was inappropriate because theft and eluding are "factually and legally unrelated" to the attempted assault. Relatedly, Pulliam argues that the court erred by considering the crime grave or serious because no one was injured, and the offense was an attempted rather than completed crime.

¶ 27 Even if we set aside the acts that Pulliam says the court shouldn't have considered, we conclude on our de novo review that the attempted assault conviction is grave or serious in light of the other facts considered by the district court. *Wells-Yates II*, ¶ 36 (gravity or seriousness inquiry isn't binary but rather a question of degree). That Pulliam didn't actually hit the officer doesn't detract from the fact that, while in an attempt to flee from police, he drove

his vehicle straight at another vehicle with someone inside it and that he continued eluding the police until he crashed his car.[2] As the district court noted, he could have seriously injured the officer. Further, Pulliam was solely culpable for his conduct and was motivated by a desire to elude the officers. *See McDonald*, ¶ 12. Accordingly, the district court didn't err by concluding that this offense was grave or serious.

### C. Predicate Offense — Accessory to Crime

¶ 28 In 2010, Pulliam was charged with two counts of rioting in a detention facility. He pleaded guilty to an added count of accessory to crime in exchange for dismissal of the original rioting charges. The district court made the following findings as to Pulliam's offense:

- Pulliam was an inmate when he committed the offense.

---

[2] To the extent Pulliam contends that the court erroneously considered any of this conduct because attempted second degree assault of a peace officer isn't a lesser included offense of first degree assault on a peace officer and he didn't stipulate to a factual basis for a "greater offense," we disagree. The court appropriately considered Pulliam's motive to commit the attempted assault, *see McDonald v. People*, 2024 CO 75, ¶ 12, as well as the facts underlying the attempt itself.

- He went to another housing area within the jail without authorization.

- Pulliam and a fellow gang member started a fight with rival gang members.

- Pulliam and the other combatants ignored the jail staff's commands to cease fighting.

- Jail staff ultimately had to pepper spray Pulliam to get him to stop.

¶ 29    The court concluded that Pulliam's offense was grave or serious because (1) the crime occurred while he was in custody; (2) by going to a different housing area without authorization and starting a fight with rival gang members, Pulliam placed the staff and inmates at the jail in great danger; and (3) the crime was inherently violent and required jail staff to exercise force to stop him.

¶ 30    Pulliam contends the court erred by considering facts that went to his original charge of rioting in a detention facility, not his accessory-to-crime conviction, which he notes isn't a lesser included offense of the rioting charge.  He additionally faults the

14

district court for relying on gang affiliation information, which he says wasn't included in the arrest affidavit.

¶ 31 However, even setting aside the details about Pulliam's gang affiliation and motive for entering the unauthorized area as part of our de novo review, *Wells-Yates I*, ¶ 35, we agree with the district court's conclusion that Pulliam's offense was grave or serious under the circumstances. First, we are "not foreclosed from considering the aggravating facts of the offense as it was actually committed." *Wells-Yates II*, ¶ 29. Second, Pulliam's conduct — fighting with other inmates in a detention facility and refusing to stop fighting when told to do so — could have resulted in serious injury to jail staff and inmates alike.[3]

---

[3] Pulliam argues that "it appears [he] acted in self-defense or defense of others because he only engaged [in the fight] after another person was attacked," but cites no record evidence supporting this claim. Therefore, we don't consider it. C.A.R. 28(a)(7)(B) (An appellant's brief must support the arguments by identifying the "parts of the record on which the appellant relies."); *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996), *aff'd*, 940 P.2d 348 (Colo. 1997) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions.").

## D. Harshness of the Penalty

¶ 32    Pulliam's sixty-four-year sentence for the aggravated robbery conviction and ninety-six-year sentence for the attempted murder conviction are harsh, even taking into account the length of time he will serve before he is eligible for parole. *See Wells-Yates II*, ¶ 60.

¶ 33    Given the per se grave or serious nature of the aggravated robbery, combined with the seriousness of two of Pulliam's predicate offenses — which involved a disregard for law enforcement and either violence, the possibility of serious injury, or both — the sixty-four-year aggravated robbery sentence doesn't give rise to an inference of gross disproportionality. *Wells-Yates I*, ¶ 24; *see People v. Loris*, 2018 COA 101, ¶ 29 ("It is not necessary for each offense to be grave or serious for a court to conclude that a sentence is not grossly disproportionate.").

¶ 34    Much the same analysis applies to the attempted murder sentence. Pulliam's conduct was grave or serious: motivated by his desire to steal, he took a substantial step toward killing Bigfeather after deliberation and with intent. *See McDonald*, ¶ 12. When considered in combination with his predicate offenses, the ninety-six-year sentence he received for that crime doesn't give rise

16

to an inference of gross disproportionality either. *Wells-Yates I,*
¶ 24.

## IV. Disposition

The order is affirmed.

JUDGE J. JONES and JUDGE MEIRINK concur.